520 F.2d 386
 Charles O. FINLEY et al., Plaintiffs-Appellees,
v.
PARVIN/DOHRMANN COMPANY, INC. et al., Defendants-Appellants.
Parvin/Dohrmann Company, Inc., Delbert W. Coleman, William
C. Scott, Jesup& Lamont, John J. Dunphy and F. O.
F. Proprietary Funds, Limited, Petitioners,
v.
Honorable Inzer B. WYATT, U. S. D. J., Respondent.
 Nos. 1285, 1286, Dockets 75-7354, 75-3032.
 United States Court of Appeals,
Second Circuit.
 Argued July 18, 1975.
Decided Aug. 6, 1975.
 
 Martin I. Shelton, New York City (Daniel L. Carroll, and Shea, Gould, Climenko, Kramer & Casey, New York City, of counsel), for plaintiffs-appellees.
 Richard J. Barnes, New York City (Ronald S. Daniels, and Townley, Updike, Carter & Rodgers, New York City, of counsel), for Delbert W. Coleman and William C. Scott.
 R. L. Duff, New York City (Carro, Spanbock, Londin, Rodman & Fass, New York City, of counsel), for Jesup & Lamont and John J. Dunphy.
 Robert A. Meister, New York City (Milgrim, Thomajan & Jacobs, New York City, of counsel), for F. O. F. Proprietary Funds Ltd.
 Rosenman, Colin, Kaye, Petschek, Freund & Emil, New York City (Jenner & Block, Chicago, Ill., and Joel W. Sternman, New York City, of counsel), for Parvin/Dohrmann Company, Inc.
 Before MOORE, FRIENDLY and VAN GRAAFEILAND, Circuit Judges.
 FRIENDLY, Circuit Judge:
 
 
 1
 The complaint in this action under the securities laws was filed in the District Court for the Northern District of Illinois on April 8, 1970. Plaintiffs Charles O. Finley, his wife, Shirley M. Finley, and a family corporation, Charles O. Finley & Company, Inc., had purchased thirty-seven thousand shares of defendant Parvin/Dohrmann Company, Inc. in 1969. Thirty thousand of these were shares purchased from defendant F. O. F. Proprietary Funds Limited (FOF) as part of an unregistered distribution by FOF of eighty-one thousand such shares which was allegedly in violation of § 5 of the Securities Act of 1933. The other seven thousand shares were purchased on the open market at prices which allegedly reflected conduct by the other defendants in violation of § 12 of the Securities Act of 1933 and §§ 9(a) and 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5. Plaintiffs sought rescission or, in the alternative, damages of $2,500,000 or more.
 
 
 2
 Late in August, 1970, the action was transferred to the Southern District of New York at the request of the defendants and over the opposition of the plaintiffs, in part because related actions against the defendants were pending in the Southern District. On October 5, 1971, New York counsel for plaintiffs filed notices to take the depositions of defendants Parvin/Dohrmann, Coleman and Scott at various dates in November, and for the production of documents under F.R.Civ.P. 34. Some documentary material was produced. The date for taking the depositions was extended several times by stipulation, the last such extension being until various dates in April and May, 1972. A related action brought by the SEC was settled in 1972 and plaintiffs allegedly received 833 shares of Parvin/Dohrmann stock valued at $29,779.75. A private class action based on some of the same facts as here alleged was also settled, but by letter dated August 9, 1972, to the clerk of the Southern District Court, plaintiffs opted out of the class, noting that they were pursuing their own remedies in the instant action. In April, 1974, Argent Corporation made a tender offer to all stockholders of Parvin/Dohrmann, as a result of which plaintiffs received $88 per share for the holdings they had retained. Defendants say this eliminated plaintiffs' claim for rescission and reduced the damage claim to $300,000; plaintiffs assert the latter amounts to over $1,000,000 the difference apparently being interest on moneys borrowed to purchase the stock.
 
 
 3
 We shall never know what would have happened if the case had not been reassigned to Judge Wyatt in March, 1975,[1] as part of a program to expedite the disposition of civil cases which had been pending in the Southern District for more than three years. He promptly directed that a pretrial conference be held on April 3 before Magistrate Schreiber. Apparently he had advised the magistrate that he would try the case between May and July and that consequently only very limited further discovery should be allowed. The magistrate requested the submission of a pretrial order fixing a schedule. While plaintiffs' counsel served some notices for discovery and production of documents on April 14, apparently believing that defendants were also going to do so, defense counsel were more intrigued by a remark of the magistrate to the effect "that the plaintiff seemed lucky that no one had made a motion to dismiss for lack of prosecution or that the Court had not on its own motion dismissed the case for lack of prosecution in light of the five years of inactivity." This possibility became the main subject of discussion at a second pretrial hearing before Magistrate Schreiber on April 18. He gave leave to the defendants to move for dismissal for lack of prosecution under F.R.Civ.P. 41(b), provided that the motion was returnable sufficiently soon as not to interfere with Judge Wyatt's plan to commence the trial early in May. On April 29 defendants served appropriate motion papers, accompanied by affidavits, returnable May 2; plaintiffs filed an answering affidavit.
 
 
 4
 The argument took a rather unexpected turn. At the outset Judge Wyatt remarked to counsel for certain defendants that "the trouble is that under the system which has obtained in this court for certainly the last two years," referring to the Individual Assignment System, "what could the plaintiff have done to get this case tried?" The judge's reference was to the fact that under IAS, each case is assigned to a specific judge from its inception, whereas the former Master Calendar System placed a definite burden on the plaintiff to see to it that his case was put on the calendar for assignment to a judge just before trial. When counsel responded that the lack of prosecution lay not only in failure to bring the case on for trial but in failure to conduct discovery, the judge accurately predicted the position of plaintiffs' counsel by hypothesizing that the latter would say "I don't want any discovery. I just want to try it." Considerably later, in response to a suggestion by counsel for another defendant that the judge was taking the position that IAS had created an "inability to determine when for purposes of 41(b) there is non-prosecution, which is an implied repeal of the rule or a belief that the Court lacks power to dismiss under 41(b) in the circumstances of the individual calendar system," Judge Wyatt refused to be thus pinioned, saying:
 
 
 5
 No; it is not lack of power. It is that I don't think I can fairly deny the plaintiff a trial. Suppose he had no machinery to urge a trial other than, as has been suggested, harassing and bedeviling the judge to get a trial. I don't think plaintiffs ought to be required to do that.
 
 
 6
 On this ground the judge, although ordering that there would be no discovery on either side, denied the motion to dismiss, but agreed to and did certify the case for an interlocutory appeal under 28 U.S.C. § 1292(b).[2] We granted leave to appeal. Prior to our doing so, defendants also filed a precautionary petition for a writ of mandamus. We are advised that the trial date has been adjourned to October 6.
 
 
 7
 The main argument of defendants' counsel on appeal takes a form quite similar to what we have just described. They present the case as if the district judge had ruled that the failure of IAS to provide a formal method for noticing a case for trial prevented him from exercising a discretion which he would otherwise have exercised, or indeed did exercise, in their favor. If that were a proper characterization, we would be obliged to rule with defendants, although we would have to consider whether the proper disposition would be a direction to grant the motion or a remand for further consideration. Defendants point to Rule 15 of the Civil Rules for the Southern and Eastern Districts of New York which provides that, in the absence of a pertinent federal statute or rule or parallels or analogies furnished thereby, "the procedure heretofore prevailing in courts of equity of the United States shall be applied, or in default thereof, in the discretion of the court, the procedure which shall then prevail in the Supreme Court or the Surrogate Court as the case may be of the State of New York may be applied." This, they say, would have allowed plaintiffs to file a note of issue, as was the District Court's former practice and as Rule 3402 of New York CPLR provides.[3] Further, they claim that the chief reason why prior district court practice provided for a note of issue was that counsel could not know which judge would try the case; under IAS, they say, any plaintiff desiring a trial can make his wishes known simply by writing a letter or making a telephone call to the judge to whom the case has been assigned. Indeed, they report that "an informal poll of the Chambers of all of the other District Judges in the Southern District (including those Judges to whom this case had earlier been assigned) conducted by Appellants discloses that a telephone call to Chambers or a letter to the Judge typically results at least in a pre-trial conference to consider a trial date."[4] For these and other reasons, some of which will appear below, we would not have reversed if Judge Wyatt had granted the motion to dismiss. Cf. S & K Airport Drive-In, Inc. v. Paramount Film Dist. Corp., 58 F.R.D. 4 (E.D.Pa.), aff'd without opinion, 491 F.2d 751 (3 Cir. 1973).
 
 
 8
 However, as already indicated, Judge Wyatt's reasoning was not what the defendants contend. Recognizing that he had power to dismiss the action under F.R.Civ.P. 41(b), he declined to do so because he thought it would be unfair in view of what he considered to be confusion under the Individual Assignment System as to how a plaintiff should proceed in bringing his case on for trial. The IAS Rules contain provisions from which a plaintiff's lawyer could reasonably assume that the assigned judge would take the initiative in moving the case on his calendar,[5] and we know from our own calendar how heavily the Southern District was burdened during much of the period here in question with the trial of criminal cases in response to this court's, and later its own, speedy trial plan. While apparently aware that some of his colleagues were willing to act on the basis of informal communications from plaintiffs' lawyers, Judge Wyatt did not believe a plaintiff should be penalized because his lawyer had not chosen to take that route. If the continued possibility of filing a note of issue had been called to his notice, he would doubtless have responded that the plaintiffs should not have their action dismissed because of their lawyer's failure to do something which under IAS is rarely done, see fn. 3 supra. He thought these considerations of fairness overrode the defendants' contentions based on the lapse of time, lack of discovery and prejudice.
 
 
 9
 Thus the true question raised by the appeal is whether by giving such dominating weight to what he considered a deficiency in IAS the judge abused the discretion confided to him, 5 Moore, Federal Practice P 41.11(2) at 1115, 1125 (1974). Appellate courts appear to have made two rather different formulations of what constitutes such abuse. In the well-known opinion in Delno v. Market St. Ry., 124 F.2d 965, 967 (9 Cir. 1942), Judge Haney stated that discretion
 
 
 10
 is abused when the judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.
 
 
 11
 A more generous standard of review is suggested in Judge Magruder's equally well-known opinion in In re Josephson, 218 F.2d 174, 182 (1 Cir. 1954), a formulation which we have approved in other contexts, see, e. g., Carroll v. American Federation of Musicians, 295 F.2d 484, 488-89 (2 Cir. 1961):
 
 
 12
 "Abuse of discretion" is a phrase which sounds worse than it really is. All it need mean is that, when judicial action is taken in a discretionary matter, such action cannot be set aside by a reviewing court unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.
 
 
 13
 A review of the cases dealing with dismissals or refusals to dismiss under F.R.Civ.P. 41(b) indicates that the stricter standard of review should be applied at least when the district court has refused to dismiss.[6] Use of a rigid standard of review can be attributed in part to the procedural posture which a refusal to dismiss will normally have when the case reaches an appellate court. Until the Interlocutory Appeals Act of 1958 added § 1292(b) to the Judicial Code, a discretionary refusal to dismiss for want of prosecution could come to a court of appeals for review only after a plaintiff had won on the merits; even since 1958 there seem to have been relatively few interlocutory appeals from such rulings. There is a natural reluctance to reverse a plaintiff's judgment on the merits because of a pretrial order refusing to dismiss for want of prosecution. See Waterman, An Appellate Judge's Approach When Reviewing District Court Sanctions Imposed for the Purpose of Insuring Compliance with Pretrial Orders, 29 F.R.D. 420, 422 (1961). It is also significant that, while a dismissal with prejudice (or even without prejudice if the statute of limitations has run) is a very harsh sanction, see 9 Wright & Miller, Federal Practice and Procedure § 2369 at 193-99 (1971), a refusal to dismiss merely forces the defendant to trial.
 
 
 14
 Indeed, our research, extensive although perhaps not exhaustive, has revealed only one case in which a federal appellate court has reversed a trial court's refusal to dismiss for failure to prosecute, Tradeways Inc. v. Chrysler Corp., 342 F.2d 350 (2 Cir.), cert. denied, 382 U.S. 832, 86 S.Ct. 71, 15 L.Ed.2d 75 (1965), and the parties' briefs do not cite another. Tradeways is factually very different from the case at hand; there the complaint had been twice dismissed, and twice restored to the calendar with the defendant's consent, before, on the eve of trial, the plaintiff asked for yet a further delay, which was in contravention of a prior court order. It was the denial of a third motion to dismiss, made under those circumstances, which the majority held to be an abuse of discretion.[7]
 
 
 15
 The facts here are much less compelling in defendants' favor. We do not find great force in the argument that plaintiffs have failed to pursue discovery. Apart from the point that this would transform a right into a duty, plaintiffs make a substantial response, namely, that they reasonably concluded that the amount of testimony taken from various defendants in proceedings before the SEC and the American Stock Exchange made discovery unnecessary. There is more to defendants' claims of prejudice from the loss of witnesses, particularly FOF's claim based on the unexpected death in 1974 of Edward Cowett, an important former executive, in his mid-40's. Three years of inactivity by the plaintiffs are a long time, and their explanations, which we need not detail, are, to say the least, not overwhelmingly convincing. Against this the judge could give some weight to the defendants' failure in this case, in sharp contrast to the defendant's efforts in Tradeways, supra, to bring the delay to the district court's attention.
 
 
 16
 Defendants say this failure is irrelevant in light of Judge Medina's frequently cited statement in Messenger v. United States, 231 F.2d 328, 331 (2 Cir. 1956), that "The operative condition of the Rule (41(b)) is lack of due diligence on the part of the plaintiff not a showing by the defendant that it will be prejudiced." But Messenger was a case where no valid service of process had been made in four years and five months. A defendant who has not been brought into court has no obligation to do anything and "(t)he probability of prejudice to defendants upon whom process is not served for a long time is particularly great." Pearson v. Dennison, 353 F.2d 24, 28 (9 Cir. 1965) (Duniway, J.). Similarly in Joseph Muller Corp. Zurich v. Societe Anonyme de Gerance et d'Armement, 508 F.2d 814, 815 (2 Cir. 1974), where we said "Messenger is the governing law," there had been a four-year delay in the service of process.
 
 
 17
 In cases where service had been made but there was a protracted delay in moving the case to trial, some district judges have felt that the defendant had no duty to bring it forward, Bendix Aviation Corp. v. Glass, 32 F.R.D. 375, 378 (E.D.Pa.1962), while others have held that there was some burden on the defendant to expedite matters, Wholesale Supply Co. v. South Chester Tube Co., 20 F.R.D. 310, 313 (E.D.Pa.1957). In our view, the correct rule is that the failure of a defendant to call the court's attention to a plaintiff's undue delay in bringing a case on for trial, by formal motion or otherwise, may be considered as a factor in informing the court's discretion. Of course, such action by a defendant is not a necessary condition to subsequent dismissal. It cannot be, since the power to dismiss for failure to prosecute does not exist solely for the benefit of defendants; it exists, at least in part, "in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts." Link v. Wabash R.R., 370 U.S. 626, 629-30, 82 S.Ct. 1386, 1388, 8 L.Ed.2d 734 (1962). On the other hand, we see no reason why the court cannot give such weight as is appropriate to a defendant's having contributed to such "undue delays."[8]
 
 
 18
 Defendants argued to Judge Wyatt that an earlier motion on their part might have roused a sleeping dog before the delay had lasted long enough to justify dismissal. However sensible this may have been as a matter of strategy, it does not follow that the district judge could not take the defendants' silence into account. Plaintiffs, he felt, lacked a truly adequate mechanism for bringing the case to trial, and defendants failed to use a tool they could readily command. We refuse to brand the denial of this motion to dismiss as an abuse of discretion. However, in view of the time that has now become available before the October 6 trial date, the judge might consider allowing the defendants any discovery that can be completed before then if they wish to have it.
 
 
 19
 Since the case is here on appeal under 28 U.S.C. § 1292(b) and the order denying defendants' motion was discretionary in any event, the petition for mandamus will be dismissed.
 
 
 20
 On the appeal the order is affirmed; the mandate will issue forthwith. The petition for mandamus is dismissed.
 
 
 
 [1]
 Apparently when the Rules for the Administration of the Civil and Criminal Calendars of the Southern District of New York under the Individual Assignment System (IAS) became effective for civil cases on July 1, 1972, this action was first assigned to Judge Gagliardi; at some unspecified date, surely prior to December 14, 1973, it was reassigned to Judge Stewart
 
 
 [2]
 The effort of defendants' counsel to place the judge in the position of having grounded his denial on lack of power and of consequently refusing to exercise discretion, and his continued and successful resistance to this, are shown by comparing the § 1292(b) certificate submitted by the attorneys for the defendants and that signed by the judge. The former read:
 Where the District Court concluded that an action should otherwise be dismissed for failure to prosecute pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, is the District Court precluded from dismissing solely because the Individual Assignment and Calendar Rules adopted by the District Court in July, 1972 do not explicitly provide for a formal notice by a plaintiff that a case is ready for trial?
 The judge altered this to read:
 Where the District Court concluded that an action should otherwise be dismissed for failure to prosecute pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, is the District Court precluded as a matter of fairness from dismissing because the Individual Assignment and Calendar Rules adopted by the District Court in July, 1972 do not provide any machinery by which a plaintiff can give notice that the plaintiff is ready for trial and is asking for a trial?
 
 
 [3]
 The Report of the Committee on the Federal Courts of the Association of the Bar of the City of New York Evaluating the Individual Assignment System in the Southern District of New York after Three Years Experience, dated July 8, 1975 (hereafter Bar Ass'n IAS Report), states that "two judges require the filing of a Note of Issue or Statement of Readiness in all civil cases" (p. 41), while "(t)wenty judges do not have such a special rule . . . ." (P. 42). While these special rules appear from time to time in the New York Law Journal, no handbook of them has been prepared. Bar Ass'n IAS Report, p. 40
 
 
 [4]
 The Bar Ass'n IAS Report considers these practices, especially telephone calls, to be a "disturbing outgrowth" of IAS which "was the subject of vigorous comment by several of the judges interviewed" (p. 16), and suggests "that ex parte communications are, in the main, fraught with mischief and that, in the absence of appropriate procedures by counsel, the judge should direct that any communications with the court be by letter with a copy to opposing counsel." (P. 17). The special rules indicate that many but by no means all judges have directed that telephone calls be made to a deputy clerk rather than to chambers. The difficulties which even the most innocent form of oral communication may sometimes create are illustrated by our recent decision in McCormack v. Schindler, 520 F.2d 358, 359 (2 Cir. 1975). We also think appellants' conduct of the "informal poll," apparently without notice to appellees' counsel, was of dubious propriety and we give no weight to it
 
 
 [5]
 Notably the first sentence of Rule 1 ("This court shall operate under an individual assignment system to assure continuous and close judicial supervision of every case.") and Rule 4(C), "Cases Certified for Prompt Trial or Disposition."
 
 
 [6]
 Several recent cases, including one from our own court, have indicated that appellate review over a trial judge's grant of a dismissal for failure to prosecute should also be "extremely narrow" in scope. Theilmann v. Rutland Hospital, Inc., 455 F.2d 853, 855 (2 Cir. 1972); Marshall v. Sielaff, 492 F.2d 917, 918 (3 Cir. 1974). Other courts have indicated a willingness to embrace a rather wider scope of review in such cases, Pearson v. Dennison, 353 F.2d 24, 28 n. 6 (9 Cir. 1965), and have conducted a more exacting reassessment of the facts of the case, Reizakis v. Loy, 490 F.2d 1132, 1135-36 (4 Cir. 1974). See also 5 Moore, Federal Practice P 41.11(2) n. 24 (1974 & Cum.Supp.)
 
 
 [7]
 Even on these facts Judge Waterman disagreed, correctly pointing out that the four cases cited by the majority were "affirmances of dismissals by the district judge none is a reversal of a failure to dismiss," 342 F.2d at 356 (concurring opinion)
 
 
 [8]
 The court's remark in Von Poppenheim v. Portland Boxing and Wrestling Comm'n, 442 F.2d 1047, 1054 (9 Cir. 1971), cert. denied, 404 U.S. 1039, 92 S.Ct. 715, 30 L.Ed.2d 731 (1972), "(s)omewhere along the line, the rights of the defendants to be free from costly and harassing litigation must be considered," which defendants quote to us, does not run contrary to our analysis. It should be read in light of the efforts made in that case by both the defendants and the court to prod the plaintiff into action, and the fact that the plaintiff there was granted two extensions between the filing of the Rule 41(b) motion and the ultimate dismissal