**INDEX FUND, INC., Plaintiff,**

v.

**Robert R. HAGOPIAN, et al., Defendants.**

**No. 73 Civ. 2665 (CHT).**

United States District Court, S. D. New York.

June 4, 1981.

---

Kensington & Sterba, New York City, for plaintiff Index Fund, Inc.; Charles E. McGuinness, New York City, of counsel.

Graves & Allen, Oakland, Cal., Olshan, Grundman & Frome, New York City, for defendant Robert R. Hagopian; Jeffrey Allen, Oakland, Cal., Peter Schram, New York City, of counsel.

Shearman & Sterling, New York City, for defendants First National City Bank and First National City Trust Company (Bahamas) Limited; Leonard Gross, Werner L. Polak, Clarence W. Olmstead, Jr., New York City, of counsel.

Weisman, Celler, Spett, Modlin & Wertheimer, New York City, for defendants Armstrong Investors, S. A. and Armstrong Capital, S. A.; Marshall Berger, New York City, of counsel.

## OPINION

TENNEY, District Judge.

Defendant Robert R. Hagopian moves pursuant to Federal Rule of Civil Procedure ("Rule") 41(b) and (c) for an order dismissing, for lack of prosecution, the following claims: (1) plaintiff Index Fund, Inc.'s ("Index Fund") complaint; (2) the cross-claims asserted by defendants First National City Bank ("Citibank") and First National City Trust Company (Bahamas) Ltd. ("Citi-

trust"); and (3) the cross-claims of defendants Armstrong Investors, S. A. ("Armstrong Investors") and Armstrong Capital, S. A. ("Armstrong Capital") (collectively referred to as "Armstrong"). The motion is denied.

*Background*

The complaint in this eight year old action stems from an alleged scheme to defraud the plaintiff by causing it to purchase worthless securities from an "off-shore" mutual fund, referred to as the Armstrong Fund, which was administered by Armstrong Capital. Index Fund, an investment company incorporated in Massachusetts, claims that it lost more than one million dollars as a result of these and other fraudulent purchases. According to the plaintiff, Hagopian, who had served as Index Fund's president and as president and chairman of Index Fund's investment advisor, accepted bribes in return for purchasing, on Index Fund's behalf, securities of little or no value. Citibank agreed to act as transfer agent, registrar and corporate domiciliary for Armstrong Fund and to provide officers and directors. The gist of Index Fund's complaint against Citibank and its subsidiary, Cititrust, is that they failed to exercise proper control over the Armstrong Fund and thus permitted the fraudulent transaction entered into by Index Fund.

For purposes of this motion, it is important to ascertain when these parties undertook certain actions in the course of this litigation and when they received notice of their adversaries' claims and motions. Index Fund's complaint was filed on June 15, 1973 and Hagopian was served with a summons and a copy of the complaint one week later. At that time, he was represented by Harold E. Rogers, Jr. of the firm of Nichols, Rogers & Schreiner which is located in San Francisco. On July 30, 1973, Rogers wrote to plaintiff's attorney, Charles E. McGuinness, requesting "an open extension of time in which to respond to [the] complaint" so that the parties "could discuss ways in which Robert Hagopian could assist [Index Fund] in [its fidelity bond] action against the Insurance Company of North America ["INA"]." Exhibit A to Affidavit of Charles E. McGuinness, sworn to April 23, 1981 ("McGuinness Aff.").[1] That extension was granted but the discussions proved fruitless. On October 31, 1973, McGuinness wrote to Rogers that Hagopian must respond by December 1, 1973 and that "thereafter I shall deem him in default." Exhibit B to McGuinness Aff. This letter also included the critical information that Citibank and the two Armstrong corporations had filed cross-claims against Hagopian. Hagopian's pro se answer was filed on or about December 14, 1973. He listed his address as 1590 *33rd* Avenue, San Francisco, California (emphasis added). The document was sent to the clerk's office with a cover letter written by Rogers. The letter stated that Index Fund had been served by mail on December 4, 1973—a statement supported by the affidavit of service. The letter continued: "We do not have knowledge that any other parties have appeared, nor do we have any addresses on which to serve them with this response." Letter to the Clerk of the United States District Court for the Southern District of New York from Harold E. Rogers, Jr., dated December 12, 1973.

According to Armstrong, its answer, counterclaims, and cross-claims were served on Index Fund on or about October 18, 1973. Inexplicably, Armstrong failed to file its response with the Court until May 10, 1976. Since the document is dated October 18, 1973 and Index Fund responded to Armstrong's counterclaims on November 23, 1973, the Court accepts Armstrong's representation that Index Fund received its re-

---

1. Index Fund's suit against INA was commenced shortly before the instant action was filed. That suit sought recovery on a fidelity bond issued by INA. The bond, which was obtained in accordance with the Investment Company Act, covered losses resulting from larceny and embezzlement committed by Index Fund officers or employees. The INA suit was based on Hagopian's wrongful acts. Although INA was initially awarded judgment in the case, Index Fund prevailed on appeal in August 1978. McGuinness Aff. ¶ 7. *Index Fund, Inc. v. Insurance Co. of North America*, 580 F.2d 1158 (2nd Cir. 1978).

sponse on or about October 18, 1973. Hagopian, however, was not served with Armstrong's response papers until he made the instant motion. Armstrong asserts that Hagopian was not served because he had not answered the complaint by October 18, 1973, and because he "failed to respond to the complaint in a timely fashion and has never served a copy of his answer on [Armstrong]." Affidavit of Marshall Berger, sworn to April 21, 1981 ("Berger Aff."), ¶¶ 3, 6.

Citibank and Cititrust responded to Index Fund's complaint in September 1973 and their answers and cross-claims were filed at that time. Hagopian was not served because "he had not yet filed a response to the complaint or otherwise appeared in the action." Affidavit of Leonard Gross, sworn to April 21, 1981 ("Gross Aff."), ¶ 4. At that time, these defendants claim, Hagopian was in default. When Hagopian did file an answer in December 1973, neither Citibank nor Cititrust was served with a copy. On July 9, 1980, after learning that Hagopian had filed an answer, Citibank and Cititrust filed an affidavit opposing plaintiff's motion to compel disclosure of certain documents. All parties, including Hagopian, were served with a copy of that affidavit which included a copy of the answer and cross-claims asserted by these defendants. Hagopian was served by mailing the documents to his last known address and by mailing a copy to the pro se clerk in the Southern District of New York. Id. ¶ 7. In response to Hagopian's motion, the defendants have again served him with a copy of their claims.

Citibank and Cititrust also commenced a third-party action in October 1973 against inter alia those officers and directors of Index Fund who were not named as defendants in Index Fund's original suit. This action sought indemnification and contribution in the event Citibank and Cititrust were held liable to Index Fund. In an Opinion dated June 30, 1976 and reported at 417 F.Supp. 738 (S.D.N.Y.1976), this Court dismissed the third-party complaint.

After resolution of the third-party action, the case lay dormant for several years and was transferred to the suspense docket. It was removed from the suspense docket in January 1980 and referred to Magistrate Ruth Washington for pretrial proceedings. The plaintiff and defendants Citibank and Cititrust commenced discovery and various motions were made in connection with discovery requests. In April 1980, the plaintiff sought and obtained default judgments against two of the defendants, John P. Galanis and Pericles Constantinou. Plaintiff sought to take Hagopian's deposition and various motions and cross-motions were made concerning his testimony. In January 1981, plaintiff sought disclosure of certain grand jury documents that contained information pertinent to this action. That request was denied in an Opinion dated April 27, 1981, 512 F.Supp. 1122 (S.D.N.Y.). In short, since the beginning of 1980, this previously stagnant case has been rejuvenated and actively pursued.

*Arguments*

Hagopian states that after he answered Index Fund's complaint in December 1973, he "heard nothing from any party to this action until the latter part of 1980." Affidavit of Robert R. Hagopian, sworn to April 7, 1981 ("Hagopian Aff."), ¶ 3. He therefore assumed that the plaintiff had abandoned the suit. For two years after the complaint was filed, all of Hagopian's documents which were relevant to the case were kept by an attorney "for safekeeping." Id. ¶ 4. In 1975, the attorney, who is not named, instructed Hagopian to take charge of the twelve cartons of documents and to hold onto them through the end of 1976 in case Index Fund decided to pursue its claim. Id. Hagopian states that he retained the documents as instructed and, after 1976, did not take special care to insure their safety because he thought Index Fund had decided not to press its claim. Id. In 1979, when the documents were stored in Hagopian's garage, they were destroyed in a flood. Id. According to Hagopian, the flood destroyed all the books, records, and sales reports of Meridian Management, the company he headed that served as Index

Fund's investment advisor. In his words, "all my documentation as to my activities relating to the matters raised by the complaint were destroyed in that flood." *Id.*

Hagopian claims that he was unaware of the cross-claims asserted against him until February 1981 when he was so informed by his current counsel, Jeffrey Allen, of the law firm of Graves & Allen, which is located in Oakland, California. *Id.* ¶ 6. Furthermore, referring to Harold E. Rogers, Jr., his former counsel, Hagopian states that "[i]f Rogers was in fact aware that Citibank and Armstrong had filed cross-claims against me, he never advised me of those claims." Reply Affidavit of Robert R. Hagopian, sworn to April 28, 1981 ("Hagopian Reply Aff."), ¶ 2. In response to charges that he was difficult to locate, Hagopian asserts that since the time that he filed his answer in this case, he has "lived openly in the Bay Area of California," and could have been contacted through Rogers, by checking the telephone directory, or by sending correspondence to his 1590 *53rd* Avenue, San Francisco address, where it would have been forwarded pursuant to a change of address notice filed with the Post Office. *Id.* ¶¶ 2–4 (emphasis added).

Hagopian claims that his defense has been severely undermined by the plaintiff's and cross-claimants' delay in pursuing this action. Not only have documents been destroyed, but memories have faded and witnesses may be difficult to locate. Hagopian also contends that Index Fund created the impression that it was abandoning this suit and pursuing its remedies against INA. See note 1 *supra.* Finally, he claims that he has been unfairly prejudiced because Index Fund, Citibank, and Cititrust commenced discovery in 1980 and held two pretrial conferences without notifying him of the proceedings. Hagopian Aff. ¶ 9.

According to Hagopian, the first news he heard about this suit after filing his answer was a notice of deposition that he received in October 1980 from Index Fund's counsel, Nancy Graham. This notice prompted some wrangling between the attorneys on each side and it appears that Hagopian's deposition was never taken. Affidavit of Jeffrey Allen, sworn to April 7, 1981 ("Allen Aff."), ¶ 3. Charles E. McGuinness, another Index Fund attorney, claims that he called Hagopian several times in May 1977 to ask him to testify in the suit against INA—a request that was ultimately denied. McGuinness Aff. ¶ 9. According to McGuinness, "[d]ue to the nature of these phone conversations, Hagopian was well aware of the ongoing nature of the present case as well as the case concerning Insurance Company of America." *Id.* As evidence of these conversations, McGuinness has submitted the relevant pages from his 1977 appointment book which indicate that he spoke to Hagopian three times. While the Court appreciates McGuinness's attempt to substantiate his claim, it cannot attach much probative value to the attorney's own entries in a four year old appointment book. Hagopian, not surprisingly, has "no recollection" of the calls described by McGuinness and states that "no attempts were ever made by any attorney or party in this action to get me to testify with respect to Insurance Company of America, or any other litigation pending that might have some connection to Index Fund prior to October of 1980." Hagopian Reply Aff. ¶ 5. Hagopian claims that if McGuinness indicated that Index Fund was still pursuing its case against him, he certainly would have referred the matter to his attorneys, whom he describes as "either Rogers or the law firm of Graves & Allen." *Id.*

Index Fund, of course, has a different view of the facts even beyond the dispute over the McGuinness phone calls. Plaintiff states that it has always attempted to serve Hagopian by mailing copies of all notices and court papers to the pro se clerk of the Southern District of New York and to Hagopian's last known address which was included in his answer: 1590 33rd Avenue, San Francisco. Specifically, materials were mailed to this San Francisco address on January 30, 1980, October 10, 1980, October 30, 1980, November 3, 1980, November 5, 1980, and November 21, 1980. Supplemental Affidavit of Charles E. McGuinness, sworn to May 5, 1981 ("McGuinness Supp.

Aff."), ¶ 5. These materials were returned to plaintiff's counsel marked "Not Deliverable as Addressed." *Id.* As plaintiff points out, Hagopian now states that he resided at 1590 53rd Avenue, not 33rd Avenue, which is the street given in Hagopian's answer. See Hagopian Reply Aff. ¶¶ 3, 4, 7. Additionally, Index Fund asserts that Hagopian never informed the pro se clerk's office about his changes of address.

The Court will not attempt to unravel the mystery of Hagopian's last known address; it is possible that the recent 53rd Avenue version reflects a typographical error in the Reply Affidavit or that Hagopian's answer included a similar mistake. Suffice to say that the parties disagree as to whether Hagopian rendered himself unavailable for service of papers. And while Hagopian may have given conflicting addresses or failed to notify the pro se clerk's office of his residences, it does not appear that Index Fund sought to contact Rogers or consult the San Francisco phone directory. In short, both sides evidenced a lack of diligence in this matter. The Court grants little weight to the parties' allegations regarding misconduct and dilatory tactics for it has no intention of undertaking the factual inquiry required to impart an element of truth to these various claims.

As discussed above, defendants Citibank and Cititrust state that they did not serve their cross-claims on Hagopian because at the time their responses were filed Hagopian was in default, having failed to answer the complaint, and he never served them with a copy of his answer. Citing Federal Rule of Civil Procedure 5(a), these defendants claim that Hagopian was not entitled to receive copies of the cross-claims and that he had in fact violated the Federal Rules. Rule 5(a) provides in part:

(a) Service: When Required. Except as otherwise provided in these rules, . . . every pleading subsequent to the original complaint . . . shall be served upon each of the parties. No service need be made on parties in default for failure to appear except that pleadings asserting new or additional claims for relief against them shall be served upon them in the manner provided for service of summons in Rule 4.

Citibank and Cititrust assert that their cross-claims arise out of the claims asserted in the complaint and include a charge that if these defendants are liable to Index Fund, Hagopian, in turn, is liable to the defendants. They therefore state that "Hagopian is attempting to bootstrap himself into receiving a dismissal of the cross-claims based on his not having been served with a copy [when the] fact that Hagopian was not served sooner with a copy of the cross-claims is the fault of Hagopian for not serving his answer on time and for not serving it at all on Citibank and Cititrust." Memorandum of Citibank and Cititrust at 4. Citing cases to support this assertion, these defendants claim that when a party making a motion to dismiss for lack of prosecution bears a large responsibility for the delay, the motion should be denied and the case should not be dismissed. *See Finley v. Parvin/Dohrmann Co.*, 520 F.2d 386, 392 (2d Cir. 1975); *Foxboro Co. v. Fischer & Porter Co.*, 29 F.R.D. 522, 523 (E.D.Pa. 1961); *Tinnerman Prods., Inc. v. George K. Garrett Co.*, 22 F.R.D. 56, 57 (E.D.Pa.1958).

The Armstrong defendants also state that Hagopian was not served with a copy of their cross-claims because he had failed to answer the complaint at the time they were filed and never served these defendants with a copy of his untimely answer. In their view, Hagopian himself is responsible for his failure to receive the cross-claims. Since he is at fault, his motion to dismiss the cross-claims for lack of prosecution should be denied. Berger Aff. ¶¶ 3, 5, 6.

*Discussion*

 The Court is vested with considerable discretion in determining this Rule 41 motion to dismiss claims for lack of prosecution. *Ali v. A & G Co.*, 542 F.2d 595, 596 (2d Cir. 1976); *Joseph Muller Corp. Zurich v. Societe Anonyme de Gerance et D'Armement*, 508 F.2d 814, 815 (2d Cir. 1974); *Taub v. Hale*, 355 F.2d 201, 202 (2d Cir.), *cert. denied*, 384 U.S. 1007, 86 S.Ct. 1924, 16 L.Ed.2d 1020 (1966). No single standard

governs and no single factor is decisive for the facts of each case must be carefully considered. *Michelsen v. Moore-McCormack Lines, Inc.*, 429 F.2d 394, 395 (2d Cir. 1970) (per curiam); *Preston v. Mendlinger*, 83 F.R.D. 198, 199–200 (S.D.N.Y.1979). In resolving this motion, the Court seeks to "balance the strong public policy in favor of deciding cases on the merits with the burden on the administration of justice and prejudice to the defendant caused by the delay." *SEC v. Everest Management Corp.*, 466 F.Supp. 167 (S.D.N.Y.1979).

◼ In *Messenger v. United States*, 231 F.2d 328, 331 (2d Cir. 1956), a frequently cited case in this area, the Second Circuit stated:

> The operative condition of the Rule is lack of due diligence on the part of the plaintiff—not a showing by the defendant that it will be prejudiced by denial of its motion.... It may well be that the latter factor may be considered by the court, especially in cases of moderated or excusable neglect, in the formulation of its discretionary ruling.

(Citation omitted). As recognized in *Messenger* and other cases, an unreasonable delay in service may constitute a "lack of due diligence" and can support a motion to dismiss without demonstrating actual prejudice. *See Finley v. Parvin/Dohrmann Co., supra*, 520 F.2d at 391; *Saylor v. Lindsley*, 71 F.R.D. 380 (S.D.N.Y.1976), cited with approval in *Saylor v. Bastedo*, 623 F.2d 230, 236 (2d Cir. 1980). Different courts, however, may reach inconsistent results when attempting to determine if a given delay is so inherently prejudicial that it requires dismissal without considering other factors. *Compare Preston v. Mendlinger, supra* (two year delay not determinative; court must examine other variables), *with Charles Labs, Inc. v. Banner*, 79 F.R.D. 55 (S.D.N.Y. 1978) (eighteen month delay is unreasonable, not moderate, and case should be dismissed). Such discrepancies serve to demonstrate that the unique facts of each case must be carefully evaluated in resolving a motion under Rule 41.

◼ A party seeking a dismissal for lack of prosecution should not come to court with unclean hands. The motion is likely to be rejected if the movant is largely responsible for the protracted nature of the proceedings. *Foxboro Co. v. Fischer & Porter Co., supra; Tinnerman Prods., Inc. v. George K. Garrett Co., supra*. As stated by the Second Circuit in *Finley v. Parvin/Dohrmann Co., supra*, 520 F.2d at 392, a district court can "give such weight as is appropriate to a defendant's having contributed to such 'undue delays.'" This point was recently reiterated in *Saylor v. Bastedo, supra*, 623 F.2d at 239, where the court observed that the defendants' "acquiescence in the course of the proceedings ... gives a certain hollowness to their claims of prejudice through loss of oral testimony." And, of course, "the failure of a defendant to call the court's attention to a plaintiff's undue delay in bringing a case on for trial ... may be considered as a factor in informing the court's discretion." *Finley v. Parvin/Dohrmann Co., supra*, 520 F.2d at 392; *see SEC v. Everest Management Corp., supra*, 466 F.Supp. at 171.

◼ Applying these principles to the case at bar, the Court concludes that neither the complaint nor the cross-claims asserted against Hagopian should be dismissed for lack of prosecution. Turning first to the complaint, the Court notes that Index Fund, unlike Citibank, Cititrust, and the Armstrong defendants, did serve its papers on Hagopian right after they were filed. And, according to its attorney, Index Fund's attempts to serve Hagopian with subsequent papers were unsuccessful because Hagopian had provided an erroneous address. Even if plaintiff's efforts leave something to be desired, it does appear that Hagopian made the task more difficult.

◼ Undoubtedly, this case has languished for many years. Yet for much of that time Index Fund could do little to move the proceedings along. *See SEC v. Everest Management Corp., supra*, 466 F.Supp. at 171 ("Dismissal for want of prosecution may be denied where a satisfactory explanation for plaintiff's delay exists. 9

C. Wright & Miller, Federal Practice and Procedure, § 2370 at 213 (1971).”). Index Fund states that from 1973 to 1974, Hagopian was serving a sentence for securities law violations in Lompoc Federal Penitentiary. McGuinness Aff. ¶ 5. Hagopian's counsel, Jeffrey Allen, has shed some additional light on the case by recounting a conversation he had with one of plaintiff's attorneys, Nancy Graham. According to Allen, Graham told him that Index Fund had previously lacked the necessary funds to pursue this action but was now in a position to do so because it had obtained a settlement in another case. Allen Aff. ¶ 6; Affidavit of Peter S. Schram, sworn to April 10, 1981, ¶ 2. Apparently, the case referred to was Index Fund's fidelity bond suit against INA in which it sought and obtained recovery based on funds wrongfully acquired by Hagopian. McGuinness Aff. ¶¶ 6, 7. Index Fund did not obtain a judgment on the bond until after August 1, 1978, when it prevailed on appeal. *Id.* According to Index Fund's counsel, the instant action was placed on the Suspense Docket in early 1979 “due to the plaintiff's lack of funds (resulting from Hagopian's fraud) pending recovery of proceeds from the [INA] suit.” *Id.* ¶ 6. The Court accepts plaintiff's representation that for several years it was without funds to pursue this action. Of course, financial difficulties should not completely excuse substantial delays, nor should they even be considered in all cases. Yet under the circumstances here, the Court finds that the seemingly interminable nature of this case is in large part due to legitimate factors beyond the plaintiff's control. Furthermore, the Court finds that Hagopian was not merely an innocent bystander, for he too contributed to the delay. And finally, it is worth noting that Hagopian did not move to dismiss for lack of prosecution until six months after Index Fund sought to take his deposition for this long dormant action.

Citibank, Cititrust, and the Armstrong defendants are in a somewhat different position than Index Fund with respect to this motion. In contrast to the plaintiff, these defendants did not serve their cross-claims on Hagopian for a number of years. Nor do they claim to have suffered financial losses that prevented them from pursuing these claims. And, unlike Index Fund, these cross-claimants do not allege that they tried to contact Hagopian on several different occasions.

Nevertheless, the cross-claims asserted by these defendants should not be dismissed for two reasons. First, as the defendants correctly point out, Hagopian's answer was not timely, was not served upon them, and was not yet filed at the time the cross-claims were raised. See Fed.R.Civ.P. 5(a). And while Hagopian claims he was ignorant of the cross-claims until February 1981, Rogers, his original attorney, was informed of the claims by Index Fund's counsel in October 1973. Second, since Index Fund's case against Hagopian was moving at a snail's pace, the cross-claimants can hardly have been expected to proceed by leaps and bounds. Indeed, Citibank and Cititrust did commence a third-party action that was pursued until the complaint was dismissed in June 1976. Accordingly, the Court concludes that the cross-claimants, like the plaintiff, did not display a “lack of due diligence” that would warrant dismissal of their claims for lack of prosecution.

This conclusion is not disturbed by Hagopian's claim that he has been prejudiced by the accidental destruction of papers relevant to his defense. Although unfortunate, this occurrence does not figure in the Court's evaluation of the plaintiff's and cross-claimants' performance in this case. Nor does it detract from the responsibility that Hagopian himself must bear for the delay. Finally, as stated above, while prejudice to the defendant may be considered under certain circumstances, the basic test under Rule 41 is whether the plaintiff (and cross-claimants here) has been delinquent in pursuing its claim. *See Messenger v. United States, supra,* 231 F.2d at 331.

*Conclusion*

Defendant's motion is denied. The parties are directed to proceed expeditiously in concluding pretrial proceedings. Although defendant's arguments have been rejected,

the plaintiff and cross-claimants should be well aware that the Court will not countenance unwarranted delays. Every effort should be made to achieve cooperation among the parties with respect to discovery, scheduling, and the pretrial order.

So ordered.