**Frederick W.A. KNIGHT, Plaintiff,**

**v.**

**H.E. YERKES AND ASSOCIATES, INC., and Robert Francis O'Leary, Defendants.**

**No. 87 Civ. 0702 (PKL).**

United States District Court, S.D. New York.

March 19, 1991.

---

Weg and Meyers, P.C., New York City (Dennis T. D'Antonio, of counsel), for plaintiff.

Wilson, Elser, Moskowitz, Edelman & Dicker, New York City (John S. Diaconis, Joan M. Gilbride, and David S. Hebbeler, of counsel), for defendant H.E. Yerkes and Associates, Inc.

## OPINION AND ORDER

LEISURE, District Judge.

This is an action against an insurance broker for breach of an agreement to procure effective insurance coverage. Defendant, H.E. Yerkes and Associates, Inc., ("Yerkes") moves this Court to dismiss the complaint, pursuant to Fed.R.Civ.P. 41(b), for plaintiff's alleged failure to prosecute the case. In the alternative, defendant seeks dismissal of the action pursuant to Fed.R.Civ.P. 25(a), on the ground that following plaintiff's death, plaintiff's attorney failed to substitute the proper party within the statutorily established ninety day period. Plaintiff opposes defendant's motions to dismiss and cross-moves to substitute the executor of plaintiff's estate as plaintiff. If necessary, plaintiff asks the Court to enlarge the period in which to make a timely motion to substitute, pursuant to Fed.R.Civ.P. 6(b).

## BACKGROUND

Plaintiff Frederick W.A. Knight ("Knight"), a resident of Thailand, brought this action in February 1987, seeking $34,000,000 from defendant Yerkes for an alleged breach of a 1983 agreement to procure effective insurance for the shipment of plaintiff's personal property.

While the facts underlying this action are set out more fully in this Court's previous opinion[1] (the "1987 Opinion"), they are, essentially, the following. Between 1976 and 1979, Knight purchased 222 antique statues in Thailand for approximately $65,000. They were appraised several times in 1980 and 1981 by Knight's appraiser, the final estimate being $30,307,000. In 1980, after having transported the statues from Thailand to Singapore, Knight contacted Robert Francis O'Leary ("O'Leary"), an insurance broker, to have the statues insured for a voyage from Singapore to Holland. O'Leary in turn contacted Yerkes to obtain insurance for the voyage. Yerkes succeeded in obtaining an underwriter willing to insure the statues for the voyage, but Knight did not pursue the policy when he learned that the statues would have to be independently appraised by the underwriter's experts.

In 1981, Knight was able, independently of Yerkes and O'Leary, to insure the statues for approximately $30,000,000 with a group of London underwriters. This policy was subsequently canceled, however, when the London underwriters concluded that Knight was attempting to perpetrate a fraud by grossly overvaluing the property.

In October 1982, Knight again approached Yerkes through O'Leary and requested that Yerkes obtain a $30,300,000 policy insuring the statues for a voyage from Singapore to Greece. Yerkes succeeded in obtaining coverage from a group of American insurance companies. In January 1983, the statues were shipped from Singapore to Greece. The statues were lost in transit, however, when the cargo ship that was carrying them sank in the Indian Ocean. When Knight filed a claim on his policy, the insurance company declined coverage and voided the policy *ab initio*, on the ground that Knight had failed to disclose a material risk factor, the earlier cancellation. Knight brought an action against the insurers, in which summary judgment in favor of the defendants was granted by the district court (Motley, J.), the court's holding affirmed by the Second Circuit and certiorari denied by the Supreme Court. *See Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). Knight was represented in these prior proceedings by the law firm of Kirlin, Campbell & Keating.

Undeterred by these setbacks, Knight subsequently commenced the instant action

---

[1]. *Knight v. H.E. Yerkes & Assocs., Inc.,* 675 F.Supp. 139 (S.D.N.Y.1987).

in February 1987, alleging that Yerkes had breached its agreement to procure proper and effective insurance for the shipment. In April 1987, Yerkes filed a third-party complaint against O'Leary, alleging that O'Leary would be liable for any judgment obtained by Knight against Yerkes. In its 1987 Opinion, this Court dismissed the third-party complaint against O'Leary. O'Leary was subsequently named as a defendant by plaintiff.

After Knight's death on June 25, 1989,[2] a period of confusion ensued as to the identity of the executor of his estate, as well as whether and when Knight's counsel, Weg and Meyers, P.C. ("Weg and Meyers") might be retained to represent the estate. On May 7, 1990, Yerkes filed a suggestion of plaintiff's death with the Court and mailed copies thereof to Knight's widow in Thailand and to Weg and Meyers in New York. Weg and Meyers informed this Court that they had not yet been retained by plaintiff's estate, but expected to be so retained in this action.

On or about August 17, 1990, Knight's widow, Pranee Knight–Phatummang ("Mrs. Knight"), the principal beneficiary of Knight's estate, retained Weg and Meyers to represent the estate in the proceedings. *See* Affidavit of Dennis T. D'Antonio, Esq., sworn to on August 29, 1990, ("D'Antonio Aff."), ¶ 28. On August 29, 1990, Weg and Meyers notified the Court and opposing counsel that one Albert T. Chandler ("Chandler") had been appointed executor of the estate of the deceased plaintiff. D'Antonio Aff. ¶ 40. Chandler has submitted an affidavit stating that he was appointed executor of the estate on October 21, 1989, by order of the Civil Court of Thailand; that he never received the suggestion of death; and that until August 22, 1990, he was unaware of this lawsuit. Affidavit of Albert T. Chandler, sworn to on September 14, 1990, ("Chandler Aff.") ¶¶ 2, 3. Chandler further states that even if he had been aware of the lawsuit, he would have been unable to re-tain counsel because the estate previously lacked sufficient liquid assets; that on August 14, 1990, Knight's widow "caused the required fee to be paid for retainer of counsel to represent the estate"; and that on August 24, 1990, he retained Weg and Meyers to represent him as executor in this lawsuit. *Id.* ¶ 3.

Yerkes now moves to have this action dismissed for plaintiff's alleged failure to prosecute his claim, or, in the alternative, for failure to substitute the proper party as plaintiff within ninety days of service of the suggestion of death. Weg and Meyers asks that the Court order the substitution of Albert T. Chandler as plaintiff, pursuant to Rule 25(a)(1), or, if the Court should find that the time in which to move to substitute has expired, that the Court order an enlargement of its time to move, pursuant to Rule 6(b).

## DISCUSSION

### *Rule 41(b) Motion*

Rule 41(b) of the Federal Rules of Civil Procedure allows district courts to dismiss a case with prejudice "[f]or failure of the plaintiff to prosecute or to comply with these rules or any order of the court. . . ." Dismissal for failure to prosecute is " 'a harsh remedy to be utilized only in extreme situations.' " *Alvarez v. Simmons Market Research Bureau, Inc.*, 839 F.2d 930, 932 (2d Cir.1988) (quoting *Theilmann v. Rutland Hospital, Inc.*, 455 F.2d 853, 855 (2d Cir.1972) (per curiam)); *see also Chira v. Lockheed Aircraft Corp.*, 634 F.2d 664, 668 (2d Cir.1980) ("Only on rare occasions should a district judge deprive the languid litigant of his right to a trial on the merits.").

In deciding a motion to dismiss pursuant to Rule 41(b), a court should consider the following factors:

> "[1] the duration of the plaintiff's failures, [2] whether plaintiff had received notice that further delays would result in

---

**2.** Plaintiff's counsel and Yerkes fail to assure the Court of the exact date of Knight's death. Yerkes reports the date of death as June 5, 1989, while plaintiff's counsel reports the date as June 25, 1989. For purposes of this opinion, the exact date of death is unimportant, and the Court will assume that the date of death is June 25, 1989.

dismissal, [3] whether the defendant is likely to be prejudiced by further delay, [4] . . . 'the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard[ ],' and [5] . . . the efficacy of lesser sanctions." *Alvarez, supra,* 839 F.2d at 932 (quoting *Harding v. Federal Reserve Bank,* 707 F.2d 46, 50 (2d Cir.1983) (quoting *Merker v. Rice,* 649 F.2d 171, 174 (2d Cir.1980)); *see also Romandette v. Weetabix Co.,* 807 F.2d 309, 312 (2d Cir.1986).

It is well established that dismissal for failure to prosecute is committed to the discretion of the district court. *See, e.g., Romandette, supra,* 807 F.2d at 312. The Court has reviewed the facts of the instant case in the context of the factors set forth in *Alvarez,* and concludes that, while Knight and his counsel and representatives have been less than diligent in prosecuting this case, the resulting delays do not warrant the harsh remedy of dismissal under Rule 41(b).

Defendant identifies three categories of delay attributable to plaintiff, and argues that plaintiff's delay has prejudiced defendant's ability to prepare its case. First, defendant alleges that it has been prejudiced by plaintiff's four-year delay in commencing the action because one significant witness has died and the memories of others are fading. *See* Affidavit of John S. Diaconis, Esq., sworn to on August 7, 1990, (hereinafter "Diaconis Aff.") ¶ 12. Second, defendant cites various discovery delays, such as plaintiff's failure to appear for his deposition until approximately seventeen months after it was originally scheduled and his failure to respond to interrogatories for approximately sixteen months after they were served. *See id.* ¶¶ 12, 13, 14. Finally, defendant points to the fact that for over a year after plaintiff's death, no steps were taken by plaintiff's counsel or successors to prosecute this action.

Plaintiff's counsel responds, first, that plaintiff did not negligently or unreasonably delay commencement of the action, but intentionally deferred it until after the Supreme Court denied certiorari in his action against the insurance companies. Until then, counsel asserts, "he still believed coverage to be extant and forthcoming from the insurer" and his claims had not yet ripened against defendant. D'Antonio Aff. ¶ 6. This Court agrees that plaintiff's strategic decision to exhaust its remedies against the insurer before initiating the instant action does not, in and of itself, constitute the type of dilatory conduct warranting dismissal. As plaintiff points out, defendant failed to object to the delay when the action was originally filed, by asserting an affirmative defense of laches or expiration of the relevant statute of limitations. To allow defendant to object to the timing of the commencement of the action now, over three years after discovery was begun, would be inequitable.

Similarly, the Court finds that the torpid pace of discovery in this case does not justify dismissal. Typical cases in which an action was dismissed under Rule 41(b) involved long periods of total dormancy during which no action at all was taken by the plaintiff. *See, e.g., Lukensow v. Harley Cars of New York,* 124 F.R.D. 64 (S.D.N.Y.1989) (two year period of inactivity); *Charles Labs, Inc. v. Banner,* 79 F.R.D. 55 (S.D.N.Y.1978) (eighteen month delay). Here, discovery did take place, albeit slowly.

Moreover, as plaintiff notes, defendant failed to use such procedural remedies as Fed.R.Civ.P. 37(d) to prod plaintiff into action. "A party seeking dismissal for lack of prosecution should not come to court with unclean hands." *Index Fund, Inc. v. Hagopian,* 90 F.R.D. 574, 580 (S.D.N.Y. 1981). While the burden is generally on the plaintiff, not the defendant, to expedite matters, "the failure of a defendant to call the court's attention to a plaintiff's undue delay in bringing a case on for trial, by formal motion or otherwise, may be considered as a factor in informing the court's discretion." *Finley v. Parvin/Dohrmann Co.,* 520 F.2d 386, 392 (2d Cir.1975). Defendant's "acquiescence in the course of the proceedings . . . gives a certain hollowness to [its] claims of prejudice through

loss of oral testimony." *Saylor v. Baste-do*, 623 F.2d 230, 239 (2d Cir.1980).

■ It appears in the present case that, while Knight and his successors might have pursued the case more vigorously, Yerkes acquiesced in the delay that has allegedly caused it prejudice. Yerkes complains that it has been prejudiced by delays since the commencement of this action, yet, with the instant motion, Yerkes brings its claims of delay and prejudice for the first time. This Court finds that defendant's laxity has contributed to the slow pace of discovery, and will not find a failure to prosecute based on grounds that have could have been asserted years before.

■ As to the delay following plaintiff's demise, Weg and Meyers argue that they could not properly take any action because Knight's death severed the attorney-client relationship and they had not yet been formally retained by plaintiff's estate. D'Antonio Aff. ¶ 30. Knight's widow and the executor of his estate cite financial and practical difficulties in managing the estate's affairs, as well as the difficulties engendered by distance and language. *See* Affidavit of Pranee Knight–Phatummang, sworn to on September 18, 1990, ("Knight Aff.") ¶ 2; Chandler Aff. ¶¶ 2, 3.

In regarding the prejudice caused to a defendant, past cases establish that "while prejudice to the defendant may be considered under certain circumstances, the basic test under Rule 41 is whether the plaintiff ... has been delinquent in pursuing its claim." *Index Fund, supra*, 90 F.R.D. at 581. This Court finds that the delay following plaintiff's death, though regrettable, was not such as to require dismissal of this action for delinquency. Accordingly, defendant's motion for dismissal for failure to prosecute is denied.

*Rule 25(a) Motions*

Federal Rule of Civil Procedure 25(a) provides, in pertinent part, that "[u]nless the motion for substitution is made not later than 90 days after the death is sug-gested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party." Yerkes contends that the ninety days began to run on May 7, 1990, the date it filed the suggestion of death, and that Weg and Meyers had until August 7, 1990, to file a timely motion to substitute. No such motion was filed prior to August 7, and, on that date, Yerkes submitted the current motion for dismissal of the complaint pursuant to Rule 25(a).

Weg and Meyers argues that the ninety day time period never began to run, because service of the suggestion of death was defective. Knight's widow contends that she never received the letter of service and that because she is a nonparty to the suit, service by mail was insufficient.[3] With respect to itself, Weg and Meyers claims it was not authorized to receive service on Knight's behalf, because Knight's death severed the relationship between Knight and his counsel. D'Antonio Affidavit, ¶ 30. Plaintiff's counsel further argues that Yerkes failed to serve the proper party, namely, the executor.

In *Fariss v. Lynchburg Foundry*, 769 F.2d 958 (4th Cir.1985), the Court of Appeals for the Fourth Circuit found that "service on decedent's counsel alone was inadequate to commence the running of the 90–day substitution period.... Where, as here, a personal representative has been appointed following the death of a party, the suggestion of death must be personally served on that representative." *Id.* at 961. The Court reasoned that personal service on the representative would not be onerous and that "[a]bsent personal service, there is no reason to presume that the successor or representative, who must decide whether to pursue the claim, is aware of the substitution requirement." *Id.* at 962.

The *Fariss* Court distinguished *Yonofsky v. Wernick*, 362 F.Supp. 1005 (S.D.N.Y. 1973), a case relied upon by defendant. *Yonofsky* also concerned a defendant who

---

3. Under Fed.R.Civ.P. 25(a)(1), service on a party of the suggestion of death may be made through his attorney, pursuant to Rule 5(b), but nonpar-ties must be served pursuant to Rule 4. *See, e.g., Fariss v. Lynchburg Foundry*, 769 F.2d 958, 962 (4th Cir.1985).

served the suggestion of the plaintiff's death on plaintiff's counsel. In that case, however, service was made only two days after plaintiff's death, and the Court found that service on the attorney was sufficient because defendant could not yet be expected to "know who would be the representative or successor for the deceased party." *Id.* at 1012.

The case at bar falls between the two extremes embodied in the opinions discussed *supra.* While many months had passed between plaintiff's death and the service of the suggestion of death by defendant, and a representative had been appointed in the interim, it is not clear that it would have been any easier for Yerkes to ascertain the identity of plaintiff's executor than it was for the defendant in *Yonofsky.* Weg and Meyers, plaintiff's own counsel, was unable to do so until August 1990.

██ However, in this case the Court need not decide whether the ninety day period has expired, since the Court finds sufficient grounds for extending plaintiff's time to move for substitution. In relevant part, Rule 6(b)(2) provides:

> When by these rules or by notice given thereunder ... an act is required ... to be done ... within a specified time, the court for cause shown may at any time in its discretion ... upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect....

Fed.R.Civ.P. 6(b)(2).

"The burden is on the movant to establish that the failure to act timely was the 'result of excusable neglect.'" *Yonofsky, supra,* 362 F.Supp. at 1012. The Court finds that the affidavits of the executor of the estate, Chandler, and Knight's widow, Pranee Knight–Phatummang, establish excusable neglect resulting from a variety of factors, including Mrs. Knight's residence in a foreign country and her unfamiliarity with the English language; the failure of Knight to mention this pending lawsuit in his will and Chandler's consequent lack of knowledge of this action; and the temporary lack of liquid assets with which to retain counsel. *See* Knight Aff. ¶ 2; Chandler Aff. ¶ 3.

Plaintiff's motion to enlarge the time pursuant to Rule 6(b)(2) is, therefore, granted. The Court also grants plaintiff's motion to substitute the executor of plaintiff's estate, Albert T. Chandler, as plaintiff, pursuant to Rule 25(a).

### CONCLUSION

For the reasons set forth above, the motion of defendant Yerkes to dismiss this case is denied.

Plaintiff's motions to enlarge the time in order to make a substitution pursuant to Rule 6(b)(2) and to substitute Albert T. Chandler as plaintiff pursuant to Rule 25(a) are granted.

Plaintiff is hereby placed on notice that further delay in the prosecution of this action may result in its dismissal.

The parties shall appear before this Court for a status conference in this matter on April 19, 1991, at 3:00 p.m. in Courtroom 36 of the United States Courthouse, New York, New York.

SO ORDERED.