INDEX FUND, INC., Plaintiff,

v.

Robert R. HAGOPIAN, et al., Defendants.

No. 73 Civ. 2665 (CHT).

United States District Court, S.D. New York.

Dec. 23, 1987.

Charles R. McGuinness, New York City, for plaintiff Index Fund, Inc.

Olshan, Grundman & Frome, New York City, for defendant Robert R. Hagopian; Thomas J. Fleming, of counsel.

## OPINION

TENNEY, District Judge.

Plaintiff Index Fund, Inc. ("Index Fund") brought this securities action over 14 years ago against numerous defendants alleging it was the victim of market manipulation which resulted in significant losses. After many years of on and off again activity of the parties, the sole remaining defendant Robert R. Hagopian[1] ("Hagopian") submits two separate motions, pursuant to Fed.R.Civ.P. 56: the first is for summary judgment dismissing plaintiff's claims primarily on the ground of collateral estoppel; the second is for partial summary judgment to strike certain allegations in the complaint and to exclude *in limine* certain evidence. Although this litigation is no stranger to this court, and the underlying story has been told on several occasions over the past 14 years, it is necessary to repeat much of the past events in order to properly assess the arguments presently made.[2] For the reasons stated below, the court grants both motions of defendant.

## BACKGROUND

Late in 1969 a group of promoters in New York City organized Armstrong Investors, S.A. and Armstrong Capital, S.A. (hereinafter collectively called the "Armstrong Fund") to engage in the securities business as a so-called "off-shore" mutual fund. They also organized Everest Management Corporation ("Everest") to act as an investment adviser to Armstrong Fund. John Peter Galanis ("Galanis") and Akiyoshi Yamada ("Yamada") were two of the principal officers and directors of Everest. Defendant First National City Bank ("Citibank") approved and consented to have its subsidiary First National City Trust Company (Bahamas) Ltd. ("Cititrust"), a Bahamian corporation, act as transfer agent, registrar and corporate domiciliary for Armstrong Fund and to provide all but one of the officers and directors for Armstrong Fund. Once its structure was completed and during the first part of 1970, Armstrong Fund sold almost 4 million dollars of its stock which funds were to be used for investment purposes. The receipts were deposited with Cititrust in the Bahamas and then transferred to Citibank in New York where they were invested by Everest at the direction of Galanis and Yamada for the account of Armstrong Fund. However, a substantial majority of the funds of Armstrong Fund were invested in worthless unlisted securities, price manipulated by Galanis, Yamada and others participating in the scheme.

In 1970 Index Fund was a registered open-end investment company, a Massachusetts corporation with offices in San Francisco, California. Defendant Hagopian became president of Index Fund and chairman of its investment adviser, Meridian

1. All of plaintiff's claims against Citibank, N.A., Cititrust (Bahamas) Ltd., Armstrong Capital, S.A., and Armstrong Investors, S.A. and the counter-claims of Armstrong Capital, S.A. and Armstrong Investors, S.A. against plaintiff have been dismissed with prejudice by order filed September 1, 1987. All of the cross-claims of Hagopian, Citibank, N.A., Cititrust (Bahamas) Ltd., Armstrong Capital, S.A. and Armstrong Investors, S.A. against each other have been dismissed with prejudice by order filed October 19, 1987. Plaintiff obtained a default judgment against John Peter Galanis and Pericles Con-

stantinou by order filed April 23, 1980. A default judgment against Akoyoshi Yamada and Louise Yamada was filed November 18, 1987.

2. For a complete history of this litigation, see this court's previous opinions in this matter. *Index Fund, Inc. v. Hagopian,* 417 F.Supp. 738 (S.D.N.Y.1976); 512 F.Supp. 1122 (S.D.N.Y. 1981); 90 F.R.D. 574 (S.D.N.Y.1981); 91 F.R.D. 599 (S.D.N.Y.1981); 609 F.Supp. 499 (S.D.N.Y. 1985); and 107 F.R.D. 95 (S.D.N.Y.1985).

Management Corporation ("Meridian") in 1969. Hagopian's duties as president included the purchase, sale, delivery and receipt of stocks, bonds and other securities, cash or other forms of investment in the name and on behalf of Index Fund. Plaintiff claims that Hagopian, in consideration of bribes and other similar inducements by Galanis and Yamada, caused plaintiff to purchase from Armstrong Fund and other sources the following 17 securities involving 21 transactions on the following dates:

| Trading Date | | Security |
|---|---|---|
| 06/16/70 | 9,000 shs. | Health Evaluations, Inc. |
| 06/16/70 | 35,000 shs. | Regency for Men, Ltd. |
| 06/16/70 | 35,000 shs. | Nationwide Marketing Associates |
| 06/16/70 | 15,000 shs. | Devon International, Ltd. |
| 06/16/70 | 22,700 shs. | Computer Circuits, Inc. |
| 06/17/70 | 20,000 wts. | Hair Extension Center, Inc. |
| 07/02/70 | $225,000 p.a. | Monarch Industries 6%/84 |
| 07/06/70 | 10,000 shs. | First Co-Investors, Inc. |
| 07/07/70 | 15,000 shs. | Haywood Manufacturing |
| 07/08/70 | 2,500 shs. | First Co-Investors, Inc. |
| 07/15/70 | 16,000 shs. | Synchronex Corp. |
| 07/23/70 | 4,800 units | Summit Group |
| 07/29/70 | 9,500 shs. | Microlab FXR |
| 08/06/70 | 10,000 shs. | Tranquilaire Mental Health |
| 08/06/70 | 7,000 shs. | Computerized Knitwear, Inc. |
| 08/10/70 | 6,500 shs. | Tranquilaire Mental Health |
| 08/10/70 | 1,500 shs. | Tranquilaire Mental Health |
| 08/18/70 | 20,000 shs. | Science Systems & Technology |
| 08/21/70 | $114,000 p.a. | Cable Information Systems 7%/89 |
| 09/18/70 | 5,800 shs. | Computer Studies, Inc. |
| 09/25/70 | 1,000 shs. | Computerized Knitwear, Inc. |

The aggregate cost to plaintiff for these worthless or inflated securities was $1,736,505.00. These securities were sold or otherwise disposed of by plaintiff during the period 1970–1972 for $726,354.00 resulting in an aggregate loss of $1,010,151.00.

At least as early as January 1971 Everest was under investigation by the Securities and Exchange Commission and subsequently in 1972 Hagopian was indicted for securities fraud. He pled guilty on January 22, 1973 with respect to Count 19 of the indictment which involved the purchase of Computerized Knitwear shares for $98,870.00, later sold for $36,698.00. At the time of sentencing on February 28, 1973, he admitted that he intentionally and knowingly purchased those shares for plaintiff for more than their actual value. There was no mention of any alleged bribery. Approximately two weeks before the instant action was filed by plaintiff against Hagopian and the other defendants herein-

before referred to, plaintiff filed an action on May 30, 1973 against the Insurance Company of North America ("INA"), *Index Fund, Inc. v. Insurance Co. of North America*, 73 Civ. 2386 (CHT) ("*Index I*"). Plaintiff, having been organized pursuant to the Investment Company Act of 1940, was required to obtain a fidelity bond against larceny and embezzlement covering those of its officers who had access to its funds or securities or the authority to draw such funds or dispose of such securities.

In this earlier litigation plaintiff made the same claims of bribery and the resultant purchase of overpriced securities as it was to make in the instant suit against Hagopian. However, it chose to litigate only 8 of the 21 transactions incorporated in the later suit against Hagopian. The 8 transactions covered by the *Index I* action, and later incorporated in the 21 transactions which are the subject of the instant litigation were:

| Quantity | Security | Trade Date |
|---|---|---|
| 9,000 shs. | Health Evaluations, Inc. | 06/16/70 |
| 35,000 shs. | Regency for Men, Ltd. | 06/16/70 |
| 35,000 shs. | Nationwide Marketing Associations | 06/16/70 |
| 15,000 shs. | Devon International, Ltd. | 06/16/70 |
| 20,000 wts. | Hair Extension Center, Inc. | 06/17/70 |
| 15,000 shs. | Haywood Manufacturing | 07/07/70 |
| 4,800 units | Summit Group | 07/23/70 |
| 7,000 shs. | Computerized Knitwear, Inc. | 08/06/70 |

Plaintiff's claim against INA was that on or about June 1, 1970 Hagopian was bribed by and entered into a conspiracy with certain persons, not employees of plaintiff, to purchase certain securities at manipulated prices. That from June 16, 1970 to August 6, 1970 Hagopian purchased for plaintiff at inflated prices the securities above mentioned for a total expenditure of $1,034,840 and that these securities were sold from September 17, 1970 to December 13, 1972 for $301,594, resulting in a loss of $733,-246.

A comparison of the complaint in *"Index I"* with the pleadings in the instant action makes it quite clear that the two cases involve the same allegations and issues. In both actions plaintiff has alleged that Hagopian received bribes from Galanis and Yamada, that Hagopian thereafter purchased securities for plaintiff at rigged or manipulated prices, and that plaintiff suffered $733,246 in losses in the *Index I* suit covering 8 transactions, and $1,010,151 in losses in the instant action covering the 8 transactions in *Index I* and an additional 13 transactions. It would therefore appear that the loss with respect to the additional 13 transactions only amounted to $276,905. In other words, plaintiff selected the transactions resulting in the greater loss in its suit against INA.

In June 1977 in *Index I*, after a three day trial which was conducted before this court, the jury found in plaintiff's favor on only one trade, the August 6, 1970 purchase of 7000 shares of Computerized Knitwear, Inc. The jury awarded Index Fund $98,870 which was the full cost to plaintiff. This court remitted the damages to $62,-

172, the amount of the actual loss, because it found that the "loss with respect to the purchase and sale of the stock of Computerized Knitwear, Inc. was the only concrete loss proved by the plaintiff." Moreover, "no direct evidence was introduced to link [the other] transactions to the dishonest acts of Hagopian." *Index Fund, Inc. v. Insurance Co. of North America*, [1977–1978 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,198 at 92,404 n. 2 (S.D.N.Y. Oct. 17, 1977) [Available on WESTLAW, 1977 WL 1048]. On appeal, the circuit court affirmed this court's determination that plaintiff had proved a loss solely on the Computerized Knitwear trade.[3] *Index Fund Inc. v. Insurance Co. of North America*, 580 F.2d 1158 (2d Cir.1978), *cert. denied*, 440 U.S. 912, 99 S.Ct. 1226, 59 L.Ed.2d 461 (1979). "The only direct evidence that Index Fund's losses resulted from dishonest or fraudulent activity by Hagopian was Hagopian's testimony and his plea of guilty to Count 19 which involved only the Computerized Knitwear transaction." *Id.* at 1163. Subsequent to the appeal, a judgment in favor of plaintiff was entered in the amount of $62,172, and defendant INA paid the judgment to plaintiff.

## DISCUSSION

### Hagopian's First Motion

The preclusive effects of former adjudication will be discussed herein employing the terminology of "claim preclusion" and "issue preclusion." These modern terms are a departure from the more traditional ones of "res judicata" and "collateral estoppel." Claim preclusion, which

---

**3.** The appellate court reversed this court on a ruling not pertinent to this motion. The issue involved the definition of the "trading exclusion" clause in the insurance contract.

replaces res judicata, prevents relitigation of prior causes of action on the basis that the claims should have been advanced in the initial litigation. *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). Issue preclusion is the equivalent of collateral estoppel and bars issues already litigated in a prior action. *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984).[4]

## I. *Claim Preclusion*

■ In *Index I*, plaintiff maintained an action against its insurer. In that suit, plaintiff litigated only 8 of the 21 securities transactions listed in this action. The court will not allow plaintiff to raise these additional 13 transactions.

The doctrine of claim preclusion is that once a final judgment on the merits is rendered by a court of competent jurisdiction, the plaintiff cannot relitigate the claim in a future action. *Amalgamated Sugar Co. v. NL Industries, Inc.*, 825 F.2d 634, 639 (2d Cir.1987). It is the law of this circuit that issues which could have been raised in a previous litigation are barred in a future litigation regardless of whether the issues were raised in the initial suit. *Murphy v. Gallagher*, 761 F.2d 878, 879 (2d Cir.1985); *Norris v. Grosvenor Marketing Ltd.*, 632 F.Supp. 1193, 1195 (S.D.N.Y.), *aff'd in relevant part*, 803 F.2d 1281 (2d Cir.1986).

The rationale for applying claim preclusion here is, since Hagopian "is accused of successive but nearly simultaneous acts, or acts which though occurring over a period of time were substantially of the same sort and similarly motivated, fairness to the de-

fendant as well as the public convenience may require that they be dealt with in the same action." Restatement (Second) of Judgments § 24 comment d (1982).

■ In order to invoke claim preclusion, mutuality is no longer required if the nonparty is in privity with a party to the initial action. *Amalgamated Sugar*, 825 F.2d at 640.[5] Plaintiff asserts that Hagopian was not a party to the first action "nor is he the privy of any party." Plaintiff's Memorandum at 8. The court does not agree that Hagopian was not in "privity" with the defendant in *Index I*. The concept of privity "is to be applied with flexibility." *Amalgamated Sugar*, 825 F.2d at 640. Essentially, "privity represents a legal conclusion that the relationship between the parties is sufficiently close to support preclusion." *Id.* This inquiry is one of fact for the trial court. *Id.* at 641; *Aeroget–General Corp. v. Askew*, 511 F.2d 710, 719 (5th Cir.), *cert. denied*, 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975).

■ Privity arises when the interests of the nonparty were adequately represented in the initial action. *Amalgamated Sugar*, 825 F.2d at 640; *Ellentuck v. Klein*, 570 F.2d 414, 425–26 (2d Cir.1978). In this case, Hagopian's liability was placed at issue in *Index I* "so as to have interested the carrier in obtaining a favorable outcome there." *Tolley v. American Transit Ins. Co.*, 638 F.Supp. 1191, 1194 (S.D.N.Y.1986). Surely there existed a congruence of interests between INA and Hagopian in resisting plaintiff's claim of fraud. The court concludes that the economic interests of Hagopian and INA were sufficient to yield a finding of privity.

---

**4.** The discussion of the principles of issue and claim preclusion is based on federal law. In reference to plaintiff's claim of common law fraud, state law controls the question of whether estoppel is available to Hagopian. *Ritchie v. Landau*, 475 F.2d 151, 155 (2d Cir.1973). Under the law of New York, two requirements must be met: (1) The issues must be identical and must have been necessarily decided in the initial action, and (2) the party against whom estoppel is sought to be invoked must have been given a full opportunity to contest the decision. *Norris v. Grosvenor Market Ltd.*, 632 F.Supp. 1193,

1196 (S.D.N.Y.) *aff'd in relevant part*, 803 F.2d 1281 (2d Cir.1986); *LaRocca v. Gold*, 662 F.2d 144, 148 (2d Cir.1981). Based upon the discussion above, these two requirements are clearly satisfied.

**5.** Mutuality is the principle that a party is barred from benefiting from a prior judgment unless it would have been bound by it. *Bigelow v. Old Dominion Copper Co.*, 225 U.S. 111, 32 S.Ct. 641, 56 L.Ed. 1009 (1912).

Moreover, it has been held in numerous other situations, that when new defendants are closely related to the earlier defendants, and the second action is based on the same claim, nonmutual claim preclusion is justified. *Scott v. Kuhlmann,* 746 F.2d 1377, 1378 (9th Cir.1984); *Morgan Consultants v. A.T.T.,* 546 F.Supp. 844, 847 n. 5 (S.D.N.Y.1982); *McLaughlin v. Bradlee,* 599 F.Supp. 839, 846–848 (D.D.C.1984), *aff'd,* 803 F.2d 1197 (D.C.Cir.1986); *Betances v. Quiros,* 603 F.Supp. 201, 205–07 (D.P.R.1985). The "trend is toward a relaxation of strict mutuality by a broadening of the concept of parties and their privies." *Cahill v. Arthur Andersen & Co.,* 659 F.Supp. 1115, 1120–21 (S.D.N.Y.1986), *aff'd,* 822 F.2d 14 (2d Cir.1987).

Plaintiff has not advanced any reason for not litigating all of the claims in the initial action. All of these additional claims were known to plaintiff at the time of the litigation of *Index I.* In addition, plaintiff does not present any new evidence or facts. Moreover, the court has carefully scrutinized the record and finds that plaintiff enjoyed a full opportunity in *Index I* to raise all of its claims regarding the overpriced securities. Plaintiff was not barred in any way from litigating all 21 securities transactions in the original suit. If the transactions plaintiff now wishes to assert were barred in the *Index I* litigation, the court would not permit claim preclusion. *Gargiul v. Tompkins,* 790 F.2d 265, 272–73 (2nd Cir.1986).

In sum, the court finds (1) there is a relationship between Hagopian and the INA in *Index I,* which is sufficient to be referred to as "privity," (2) plaintiff was not barred in any way from asserting all of its claims in the prior action, and (3) both actions are grounded on a common core of facts.

Consequently, the court will bar plaintiff's claims on the additional transactions under the doctrine of claim preclusion.[6]

## II. *Issue Preclusion*

■ In addition to the 13 securities purchases not previously put to the jury, plaintiff desires to relitigate the original eight transactions. This raises the principle of issue preclusion. The principle of issue preclusion is that a party to an initial litigation is precluded from relitigating the same issues in a subsequent action. *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 466 n. 6, 102 S.Ct. 1883, 1889 n. 6, 72 L.Ed.2d 262 (1982); *Murphy v. Gallagher,* 761 F.2d at 879. The doctrine of mutuality is no longer employed in this circuit. Therefore, collateral estoppel may be invoked by a defendant not a party to the original action. "[N]on-mutual issue preclusion is permitted unless it would be unfair." *Tole S.A. v. Miller,* 530 F.Supp. 999, 1003 (S.D.N.Y. 1981), *aff'd,* 697 F.2d 298 (2d Cir.1982).

In order to invoke collateral estoppel, the following conditions must be satisfied: "(1) the issues in both proceedings must be identical, (2) the issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits." *Gelb v. Royal Globe Insurance Co.,* 798 F.2d 38, 44 (2d Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987).

### A. *The identity of the issues*

■ The issues presented here are the same ones previously litigated in *Index I.* In *Index I,* the plaintiff claimed that as a result of the bribe received by Hagopian, it acquired eight overvalued securities. Plaintiff asserted that the securities were purchased between June 16, 1970 and August 6, 1970. Plaintiff's Amended Complaint in *Index I* at ¶¶ 7–9, 13. Plaintiff alleged that as a result of the purchases and subsequent sales, it incurred losses totalling over $730,000. *Id.* at ¶ 14. The court has examined the complaint in this

---

6. The court notes that none of the exceptions to claim preclusion are applicable. Such exceptions include (1) a jurisdictional or procedural impediment to presenting the entire claim, (2) a party agreeing to split a claim, (3) judicial permission to split a claim, or (4) the prior action was not decided on the merits. Restatement (Second) of Judgments § 26 (1982).

action and finds that eight specific securities litigated in *Index I* are also present in this suit. Plaintiff's Amended Complaint at ¶ 21(h). Plaintiff alleges here, as in *Index I*, that it purchased the securities because of the conspiracy involving Hagopian and various other individuals. *Id.* The court concludes that the issues in *Index I* and the ones here are identical.

### B. *Actually decided and litigated*

Clearly this prong of the test has been fulfilled. Plaintiff in *Index I* litigated a full jury trial on the merits and obtained appellate review.

### C. *Full and fair opportunity to litigate*

In reference to this prong of the test, the court must decide whether plaintiff enjoyed a full and fair opportunity to litigate the issues. The court considers that no time constraints were put on plaintiff, which is exemplified by the fact that plaintiff had four years after the complaint was filed before the case was actually litigated. During this period, plaintiff enjoyed ample opportunity to conduct unimpeded discovery and to fully develop its case. Plaintiff utilized a jury trial during which it introduced both documentary and oral evidence. Finally, plaintiff obtained appellate review.

Plaintiff claims it was denied a full opportunity to litigate because Hagopian did not appear as a witness. Plaintiff's Memorandum at 11. The court rejects that argument because to defeat issue preclusion on this ground, plaintiff must not have been responsible in any way for the absence of the evidence from the initial trial. *Kaiser Industries Corp. v. Jones & Laughlin Steel Corp.*, 515 F.2d 964, 981–83 (3d Cir.), *cert. denied*, 423 U.S. 876, 96 S.Ct. 150, 46

L.Ed.2d 110 (1975). Here, plaintiff clearly bore some degree of fault. The "plaintiff did not take steps to obtain Hagopian's testimony through depositions pursuant to Fed.R.Civ.P. 32(a)(3)(B)." *Index Fund Inc. v. Insurance Co. of North America*, [1977–1978 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,198, at 92,405 n. 2 (S.D.N.Y. Oct. 17, 1977).

Based on the above, it seems fair to state that Index Fund had a full and fair opportunity to litigate the issues in the *Index I* litigation.

### D. *Necessary to the outcome*

To prevail in *Index I*, the plaintiff was required to prove that Hagopian entered into a conspiracy to acquire the overvalued securities. Plaintiff was required to pursue this theory because of the very nature of the fidelity bond sued upon. The bond issued by the defendant did not insure against mere trading losses but rather protected plaintiff from the wrongful acts of its officers. Plaintiff admits that in *Index I*, "plaintiff claimed that it would not have purchased the securities in question but for Hagopian's involvement in the Galanis/Yamada market manipulation." Plaintiff's Memorandum at 9. Plaintiff's case hinged on the jury believing the conspiracy allegation. Therefore, the court finds that the issues litigated were necessary to the outcome of the initial litigation.

The court concludes that all of the requirements for issue preclusion have been satisfied.[7] Consequently, plaintiff is barred from relitigating claims it advanced in *Index I*.

### III. *Subrogation*

■ Defendant argues that plaintiff's loss has been subrogated to the insurer.[8]

---

7. None of the exceptions to issue preclusion are applicable. Such exceptions include (1) the claims are essentially unrelated or a new adjudication is justified because of an intervening alteration in the legal standard, (2) there exists a change in the burden of persuasion, (3) the initial court was not vested with proper jurisdiction, (4) there was an inability to obtain appellate review, or (5) the application of issue pre-

clusion was not foreseeable. Restatement (Second) of Judgments § 28 (1982).

8. Defendant also claims that Section 28(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78bb(a) (1982), prevents plaintiff from recovering twice for the loss sustained on the Computerized Knitwear, Inc. transaction. The court need not reach that argument since principles

The jury in *Index I* returned a favorable verdict to plaintiff based upon one transaction. Plaintiff recovered for its August 6, 1970 purchase of 7000 shares of Computerized Knitwear, Inc. Plaintiff's insurer, INA, paid plaintiff over eight years ago. Since plaintiff has been paid in full, its claim was subrogated to INA. *Aetna Casualty and Surety Co. v. Bekins Van Lines Co.*, 67 N.Y.2d 901, 501 N.Y.S.2d 806, 492 N.E.2d 1222 (1986); 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1546 (1981). Consequently, plaintiff is no longer the party in interest regarding this particular claim and it is barred from relitigating it.

### Hagopian's Second Motion

■ Although the court grants defendant's first motion in full, the court will briefly examine the second motion for partial summary judgment. Defendant's second motion is a request that the court strike ¶¶ 21(e), (g) and (h), 22(e), 32, 41, 59 and 63 of the amended complaint. Plaintiff opposes the motion only with respect to ¶¶ 21(h), 41 and 59. Defendant also asks the court to exclude from any potential trial the guilty pleas of Hagopian and Galanis.

In order to defeat Hagopian's motion, plaintiff must make a sufficient showing of material facts as required by *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2551–53, 91 L.Ed.2d 265 (1986). Moreover, there is no genuine issue for trial if there is insufficient evidence for the jury to render a verdict in favor of the opposing party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court has carefully searched the record to discover evidence which might be relied upon by plaintiff to raise a genuine issue of material fact relating to the alleged conspiracy but has found nothing. In reference to the heart of the complaint which is the allegation that Hagopian purchased overvalued securities from Armstrong Fund and others, the following is noted. The Citibank defendants asked plaintiff in

interrogatories to substantiate its allegation that each of the securities was price manipulated by virtue of the alleged conspiracy involving Hagopian and others. Interrogatory 7(b)–(e) provided:

(b) Identify each security purchased by Hagopian as a result of each payment or inducement;

(c) State the purchase price paid per share for each security purchased as part of this arrangement;

(d) State the actual value of each security purchased as part of this arrangement ...;

(e) Identify all documents relating in any way ... to any security purchased as a result of such payment or inducement.

Affidavit of Thomas J. Fleming submitted in support of defendant's motion for partial summary judgment sworn to September 23, 1987 ("Fleming Aff."), Exh. 5.

Plaintiff responded ten years after the alleged wrongdoing and seven years after it commenced this action:

Pursuant to Rule 33(b) of the Federal Rules of Civil Procedure, plaintiff is presently unable to state its factual contention with sufficient specificity; and expressly reserves its right to answer said interrogatory upon completion of all discovery proceedings.

Fleming Aff., Exh. 6.

Plaintiff completed its discovery without producing any evidence to substantiate the fundamental elements of its manipulation claim with respect to the 16 securities.[9] While plaintiff did file supplemental responses to its interrogatory answers, such responses do not set forth any facts corroborating its allegation. They merely reiterate the conclusion that they were all manipulated. Fleming Aff., Exh. 7.

Similarly, in interrogatories 8(a)–(n) and 13(a)–(*o*), the Citibank defendants asked plaintiff to provide basic information concerning the purchase and sale of the securities identified in the amended complaint.

---

of subrogation preclude plaintiff from relitigating that particular claim.

**9.** Plaintiff has produced evidence relating to the Computerized Knitwear, Inc. transaction.

Fleming Aff., Exh. 5. Plaintiff responded by repeatedly stating that it has "no knowledge" of the circumstances surrounding the purchase and sale of the securities. Fleming Aff., Exh. 6. In its supplemental responses, plaintiff did not revise these answers. Fleming Aff., Exh. 7.

Turning to the claim that Armstrong Fund was the source of the tainted securities, an examination of the depositions in this case reveal that plaintiff has no firm basis for claiming that any securities were sold to it by the Armstrong Fund.

### A. *Testimony of George F. Hoffman*

For example, George F. Hoffmann, plaintiff's first witness, was shown each of the "buy/sell" slips plaintiff produced and was asked, with respect to each of plaintiff's alleged purchases of securities, from whom plaintiff or its broker acquired the securities. Hoffmann's testimony consistently followed the pattern exemplified by his statements with respect to plaintiff's alleged acquisition of shares of Nationwide Marketing Associates.

> Q: Let me show you Defendants' Exhibit 29 ... Mr. Hoffmann, this document indicates that the 35,000 shares of [N]ationwide [M]arketing [were] purchased on June 16, [1970) I believe at $4 a share. Is that correct?
>
> Mr. Hoffmann: That's correct.
>
> Q: The broker in that transaction again was Wilkins?
>
> Mr. Hoffmann: Arnold Wilkins & Company.
>
> Q: Do you know from whom Arnold Wilkins acquired these shares on behalf of the fund?
>
> Mr. Hoffmann: I have no knowledge regarding that, no.
>
> Q: Did you ever discuss that with anyone at Arnold Wilkins?
>
> Mr. Hoffmann: No.
>
> Q: Do you know if anyone ever discussed that with Arnold Wilkins?
>
> Mr. Hoffmann: Not to my knowledge.
>
> Q: Do you have any documents that would reflect from whom the shares were purchased by Arnold Wilkins?
>
> Mr. Hoffmann: No.

Fleming Aff., Exh. 10 at 236–37.

### B. *Testimony of Charles E. Bohmert, Jr.*

The deposition testimony of Bohmert is even more revealing. Although Bohmert was advised by plaintiff's counsel of the basis for plaintiff's allegations and authorized, along with Hoffman, the filing of this suit, he was not only unaware of the circumstances surrounding plaintiff's purchase of securities, he also had *never heard* of the Armstrong Fund.

> Q: ... Are you aware of any of the circumstances surrounding either the purchase or sale of these securities by the plaintiff at various dates in 1970?
>
> Mr. Bohmert: No, sir. ...
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> Q: Do you know whether the Index Fund either ever purchased Fund securities from the Armstrong Fund?
>
> Mr. Bohmert: No.
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> Q: ... Have you ever heard of the Armstrong Fund?
>
> Mr. Bohmert: No, sir. Armstrong? No.
>
> Q: Have you ever heard of a company called Armstrong Capital[,] S.A.?
>
> Mr. Bohmert: No.
>
> Q: How about Armstrong Investors, S.A.?
>
> Mr. Bohmert: No.
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> Q: Do you know whether the Index Fund ever had any relationship with either Armstrong Capital or Armstrong Investors?
>
> Mr. Bohmert: Don't know.

Fleming Aff., Exh. 10 at 39, 36, 34, 35.

### C. *Testimony of Ralph Henry*

Henry was a director of plaintiff during 1970 who along with other directors, according to plaintiff's filings with the Securities and Exchange Commission, had responsibility for approving or ratifying each of plaintiff's purchases of securities. Fleming Aff., Exh. 11, Item 2.03.

Q: Mr. Henry, have you ever heard of the Armstrong Fund?

Mr. Henry: Never.

Q: Have you ever heard of a company called Armstrong Capital, S.A.?

Mr. Henry: No.

Q: Armstrong Investors, S.A.?

Mr. Henry: No.

\* \* \* \* \* \*

Q: Do you know whether anyone at the Index Fund ever communicated with the Armstrong Fund in connection with investment decisions?

Mr. Henry: I have no knowledge of it.

\* \* \* \* \* \*

Q: Do you know from whom the Index Fund would have acquired these securities? In other words, who was the seller?

Mr. Henry: No, I have no idea.

Q: Do you know who would know that?

Mr. Henry: No.

Fleming Aff., Exh. 10 at 43, 44, 47.

Plaintiff contends that the guilty pleas of Hagopian and Galanis are evidence of the conspiracy. Regarding Hagopian's plea, it was solely related to the Computerized Knitwear transaction. Moreover, the plea was an admission of embezzlement, not of bribery. Therefore, the court finds that this plea is not admissible to prove the conspiracy pursuant to Federal Rule of Evidence 803(22). In reference to the plea of Galanis, it failed to identify any particular transaction. Surely it cannot be employed to demonstrate that Hagopian was a participant in the scheme of Galanis.

Plaintiff also claims that the testimony of Hagopian during the S.E.C. investigation is evidence of Hagopian's involvement in the scheme. To the contrary, there is absolutely no admission of any conspiracy to manipulate the market. Hagopian de-

nied he had any knowledge of the illegal activity of Galanis.

Finally, plaintiff contends that grand jury testimony of unidentified witnesses, and potential trial testimony of Galanis, Hagopian and an unidentified S.E.C. attorney will substantiate its allegations. Ignoring the unlikelihood that Hagopian or Galanis will testify in plaintiff's favor, plaintiff has not even submitted deposition testimony.[10] Neither has plaintiff offered deposition testimony or an affidavit from the unidentified S.E.C. attorney. In reference to the grand jury testimony, again plaintiff does not present the names of these witnesses or even what the testimony, if available, contains.

## CONCLUSION

The court will not permit plaintiff to litigate additional claims it could have put before the jury a decade ago. Plaintiff has not articulated any reason explaining why it failed to litigate all of the claims during the *Index I* litigation. In addition, the court will not allow plaintiff to relitigate identical claims it put before the jury ten years ago. Plaintiff has been fully compensated for the one transaction on which a jury has found it incurred a loss. Consequently, plaintiff's claim has been subrogated to its insurer. Finally, the court has considered all of the parties' submissions and concludes that plaintiff has failed to produce material facts to secure a jury verdict in its favor. Accordingly, for the reasons set out above, both of defendants' motions to dismiss are granted. Submit order dismissing the complaint in conformity herewith.

So ordered.

---

**10.** There is no reason to believe, in the absence of any indication to the contrary, that Hagopian will now suddenly change his earlier testimony and claim that he actually was involved in a conspiracy with Galanis. Turning to the possibility of Galanis testifying, the court notes that he has never stated that Hagopian was a fellow conspirator. In addition, plaintiff has not even informed the court of the location of Galanis. A default judgment has been outstanding against him for nearly eight years. Consequently, it is far from certain plaintiff will be able to procure his presence at any potential trial.