William H. GOULD, Plaintiff,

v.

Woodrow NEWTON, et al., Defendants.

No. CV–89–1582A.

United States District Court,
W.D. New York.

Oct. 5, 1992.

F. James Kane, Jr., Damon & Morey, Buffalo, N.Y., for plaintiff.

John H. Stenger, Jaeckle, Fleischmann & Mugel, Buffalo, N.Y., for defendants Beaumont, Billoni, Crow, Bartlo, O'Grady and Village.

Donald G. McGrath, Falk & Siemer, Buffalo, N.Y., for defendants Kenmore Housing Authority, Newton, Moreland, Witmer, Ward, Cardino, Campagna and Belis.

## DECISION AND ORDER

HECKMAN, United States Magistrate Judge.

This matter was referred to the undersigned by the Hon. Richard J. Arcara pursuant to 28 U.S.C. § 636(c), upon consent of the parties, to conduct any and all further proceedings in the case, including trial, and order of the entry of final judgment. Presently before the Court are Defendants' motions for summary judgment. For the reasons set forth below, Defendants' motions are granted.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed this action on December 11, 1989, alleging employment discrimination on the basis of political affiliation. The complaint alleges violations of the First, Fifth and Fourteenth Amendments, 42 U.S.C. §§ 1983 and 1985, and pendent claims under the New York State Constitution and Civil Service Law.

In 1976, Plaintiff was hired by the Kenmore Housing Authority ("KHA") as a maintenance supervisor, under appointment by the then-Democratic town administration. In late 1987 or early 1988, Plaintiff applied for the position of firefighter for the Village of Kenmore, a civil service position. According to Plaintiff, and not disputed by Defendants, Plaintiff was ranked first on the competitive civil service list of candidates for the position.

In March, 1988, an incident arose which led to Plaintiff's discharge from his position with the KHA. In a letter to the KHA dated March 1, 1988, Robert Dombrowskas, then a 16-year-old Board of Educational Services ("BOCES") student working for the KHA, stated that Plaintiff had ordered Dombrowskas to do painting work at Plaintiff's home during the time that he should have been working for KHA under an occupational skills program supervised by Plaintiff. Following an executive session of the KHA on March 9, 1988, Plaintiff was informed that he had been discharged from his position as maintenance supervisor.

Meanwhile, on April 5, 1988, the Kenmore Village Board of trustees appointed Robert Moreland, Jr. to the full-time firefighter position. According to Plaintiff, Mr. Moreland was third on the civil service list, and is the son of Robert Moreland, one of the Commissioners of the KHA.

On June 9, 1988, the KHA sent Plaintiff a formal notice of hearing and statement of charges arising from the Dombrowskas incident. *See* Exh. A attached to Affidavit of John H. Stenger, Item 39. On July 14, 19 and 25, 1988, a hearing was held at the offices of KHA before hearing officer Lawrence A. Hoffman. At the hearing, Plaintiff appeared, testified and was represented by counsel. Several witnesses also testified, a record was taken, and briefs were submitted to the hearing officer.

The hearing officer found Plaintiff guilty of the misconduct stated in the KHA charges. Item 39, Exh. B. The hearing report also mentioned previous censures of Plaintiff for selling football pool tickets, using KHA telephones for his personal benefit, and an incident in 1985 involving Denise Mang, who testified at the hearing that Plaintiff had improperly touched her on a KHA elevator. *Id.* Based on Plaintiff's past performance, technical abilities and experience, the hearing officer recommended sixty days suspension without pay.

Notwithstanding this recommendation, the KHA formally discharged Plaintiff, effective December 14, 1988. Item 39, Exh. C. The KHA adopted the hearing officer's findings, but found that discharge was appropriate due to the "severity and reprehensible nature of the conduct that [Plaintiff] was found to have engaged in...." *Id.*

Plaintiff then initiated an Article 78 proceeding in New York State Supreme Court challenging his termination by the KHA. The petition was transferred to the New York State Appellate Division, Fourth Department, pursuant to CPLR § 7803(4). *See* Item 42, pp. 7–8.

Plaintiff's Article 78 petition alleged eight causes of action: (1) failure of the KHA to give written notice of all charges heard by the hearing officer, as required by state Civil Service Law; (2) deprivation of due process based on bias of the KHA and the hearing officer; (3) the hearing officer's lack of authority to conduct the proceedings; (4) deprivation of due process based on the disproportionate penalty imposed for a first violation of this nature;

(5) "conspiracy" between and among the Republican-dominated KHA and the Village Board of Trustees to bypass Plaintiff for the firefighter appointment; (6) defamation and subornation of perjury; (7) bias and prejudice on the part of KHA as a matter of law; and, (8) setting aside the KHA's determination as arbitrary, capricious, an abuse of discretion, and unsupported by substantial evidence on the hearing record. Item 39, Exh. D.

On July 13, 1990, the Appellate Division, Fourth Department, dismissed Plaintiff's Article 78 petition. In its memorandum decision, the Court stated:

> In confirming the determination of the [KHA], we note particularly that the record supports the findings of the hearing officer that the petitioner testified falsely under oath in contriving a story to explain why he sent the BOCES student to paint petitioner's apartment and that he instructed the young man to falsify records to conceal what he had done.

*Matter of Gould v. Newton, et al.,* 163 A.D.2d 820, 559 N.Y.S.2d 844 (4th Dept. 1990) (mem.); *see* Item 39, Exh. E. On December 21, 1990, Plaintiff's motion to reargue and for leave to appeal to the New York State Court of Appeals was denied.

Meanwhile, on December 11, 1989, Plaintiff brought the instant action, alleging four causes of action: (1) wrongful termination and failure to hire in violation of the First, Fifth and Fourteenth Amendments, and of 42 U.S.C. §§ 1983 and 1985; (2) violation of Plaintiff's First Amendment right to freedom of association by virtue of political affiliation; (3) conspiracy to terminate Plaintiff's employment in violation of due process and the New York Civil Service Law; and, (4) denial of equal protection under the New York State Constitution. Item 1; Item 24 (Amended Complaint).

Defendants move for summary judgment on collateral estoppel grounds, contending that Plaintiff's claims are based entirely upon the same factual allegations and arguments presented to and rejected by the state court. Defendants further argue that the Complaint should be dismissed be-

cause Plaintiff's termination was based on legitimate, non-political reasons.

## DISCUSSION

Summary judgment is appropriate if the pleadings, discovery materials, and affidavits on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 166–67 (2d Cir.1991).

In order to avoid summary judgment, however, the nonmoving party is under the obligation "to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Burke v. Bevona*, 931 F.2d 998, 1001 (2d Cir.1991). "Entry of summary judgment indicates that no reasonable jury could return a verdict for the losing party." *Coach Leatherware, Inc. v. Anntaylor, Inc., supra,* 933 F.2d at 167.

### 1. *Res Judicata*

■ The preclusive effect of former adjudication, whether termed ·*res judicata* ("claim preclusion") or collateral estoppel ("issue preclusion") provides an appropriate basis for determination of a motion for summary judgment. *See, e.g., Ayers v. City of Richmond*, 895 F.2d 1267 (9th Cir. 1990) (affirming district court's grant of summary judgment based on collateral estoppel effect of state court ruling on Fourth Amendment issues); *Tyler v. Harper*, 744 F.2d 653 (8th Cir.1984), *cert. denied*, 470 U.S. 1057, 105 S.Ct. 1767, 84 L.Ed.2d 828 (1985) (collateral estoppel barred relitigation of constitutional claims in federal court action which were fully and fairly litigated in prior state criminal pro-

ceeding); *Index Fund, Inc. v. Hagopian*, 677 F.Supp. 710 (S.D.N.Y.1987) (previous litigation of bribery and market manipulation claims provided sufficient basis for granting summary judgment against plaintiff in a subsequent action).

■ *Res judicata* prevents relitigation of facts which have already been determined in previous litigation. *Index Fund, Inc. v. Hagopian, supra*, 677 F.Supp. at 715 (citing *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979)); *see also Amalgamated Sugar Co. v. NL Industries, Inc.*, 825 F.2d 634 (2d Cir.), *cert. denied*, 484 U.S. 992, 108 S.Ct. 511, 98 L.Ed.2d 511 (1987). "Thus, whatever legal theory is advanced, when the factual predicate upon which the claims are based is substantially identical, the claims are deemed to be duplicative for purposes of *res judicata*." *Berlitz Schools of Languages, etc. v. Everest House*, 619 F.2d 211, 215 (2d Cir.1980). Stated another way, "... it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies." *Expert Electric, Inc. v. Levine*, 554 F.2d 1227, 1234 (2d Cir.), *cert. denied*, 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977).

■ Where two lawsuits are not predicated on "identical" claims, the doctrine of collateral estoppel comes into play. Collateral estoppel is premised on the principle that a party to an initial litigation is precluded from relitigating the same issues in a subsequent action, "provided that the resolution of the issue in the earlier case must have been necessary to the judgment there and that the plaintiff must have had a 'full and fair opportunity' in the earlier litigation to address the issue now claimed to be decisive in the later action." *Winters v. Lavine*, 574 F.2d 46, 56 (2d Cir.1978); *see also Index Fund, Inc. v. Hagopian, supra*, 677 F.Supp. at 7.16 (citing *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 466 n. 6, 102 S.Ct. 1883, 1889 n. 6, 72 L.Ed.2d 262 (1982); *Murphy v. Gallagher*, 761 F.2d 878, 879 (2d Cir.1985)).

In the context of state court Article 78 proceedings, the Second Circuit has held

that the rule of collateral estoppel and a modified version of the doctrine of *res judicata* can serve to bar prosecution of a § 1983 action in federal court after a prior state court adjudication of a similar action. *Winters, supra,* 574 F.2d at 56. In *Winters,* the court held that a § 1983 plaintiff in federal court "must be barred from relitigating any issues which are dispositive of [the] § 1983 action, were determined against [the plaintiff] in the prior Article 78 proceeding, and were 'necessary' to the adjudication in that earlier case." *Id.* at 60. In this context, *Winters* held that "the doctrine of *res judicata,* so applied, displays the predominant characteristics of the rule of collateral estoppel." *Id.* at 57.

▪ Thus, under the Second Circuit's application of these principles, the question for this Court is whether the factual predicate for the two actions is substantially identical, or "whether the issues finally and necessarily determined in the state proceedings are identical to those presented to the district court for determination." *Berlitz Schools, supra,* 619 F.2d at 215. Upon review of the record, and upon comparison of the claims presented in the Complaint here and in the Article 78 petition considered by the Appellate Division, I find that the facts and issues are identical and that Plaintiff therefore is barred from relitigating these issues in federal court.

All of the claims brought by Plaintiff in his Complaint in the instant case are predicated on precisely the same factual foundation that formed the basis for his Article 78 petition to the state court—*i.e.,* the circumstances of his dismissal from the KHA and the appointment of another candidate to the position of firefighter. Those facts and circumstances were exhaustively outlined in Plaintiff's Article 78 petition, and necessarily encompassed the issues which were finally determined by the Appellate Division.

Perhaps the most striking example of the duplicative nature of Plaintiff's claims in the two actions is set forth in the Fifth Cause of Action of his Article 78 petition. There, Plaintiff states that the "Republicans ... deliberately entered into a plan and conspiracy to destroy [Plaintiff]'s livelihood and reputation to provide themselves with an excuse to deny him appointment as a Kenmore firefighter and to appoint Robert Moreland, Jr. to the position." Item 39, Exh. D, ¶ 32. As alleged in the petition, this "plan" included coercing the BOCES student to sign a prepared letter outlining the apartment painting incident; excluding J. Rita Miller (KHA's Chief Executive Officer, and KHA's only Democrat), from the March 9, 1988 executive session at which the letter was presented and which resulted in the KHA's initial decision to terminate Plaintiff; amending the KHA grievance procedure to ensure Republican control of the grievance process; improper questioning of Plaintiff at his interview for the firefighter position about his troubles with the KHA; conducting the belated hearing on his dismissal before a Republican-appointed hearing officer; and, ignoring the hearing officer's recommendation of suspension. *See id.,* ¶¶ 29–42.

These are precisely the facts and issues that are alleged in the Complaint in the instant action. Regardless of whether different legal theories have been alleged, the factual issues are *identical* to those asserted in the Article 78 petition presented to and ruled upon by the state court.

Furthermore, these facts and issues were necessary to the Article 78 action, and were determined against Plaintiff in that prior proceeding. Plaintiff's Article 78 petition was dismissed in its entirety, a result which became final and binding when Plaintiff failed to appeal the Fourth Department's unanimous ruling to the state Court of Appeals. Plaintiff was represented by competent counsel throughout the proceedings, and had a full and fair opportunity to address those issues.

Under 28 U.S.C. § 1738, this court is obligated to accord the state court judgment full faith and credit, and to apply New York State's *res judicata* and collateral estoppel standards, as outlined above. *See, e.g., Winters v. Lavine, supra,* 574 F.2d at 54.

2. *Application of Mt. Healthy City School District v. Doyle*

Under the rule pronounced in *Mt. Healthy City School District v. Doyle,* 429

U.S. 252, 287, 97 S.Ct. 555, 576, 50 L.Ed.2d 450 (1977), the factual issues ruled upon by the state court, and accepted by this court as *res judicata,* are determinative of the constitutional claims raised by Plaintiff in his Complaint. *Mt. Healthy* held that, despite the fact that defendant government officials may have acted, in part, for reasons that do not comport with the requirements of the United States Constitution, a plaintiff's claim for constitutional relief cannot be sustained if the defendant government officials can demonstrate that they "would have reached the same decision as to [the action to be taken regarding the plaintiff] even in the absence of [their reliance upon constitutionally impermissible facts.]" 429 U.S. at 287, 97 S.Ct. at 576 (quoted in *Winters v. Lavine, supra,* 574 F.2d at 64).

In conducting this analysis, the fact finder may assume, for purposes of the case, that the improper reason exists, and then conclude that the Defendant has shown that it would have taken the adverse action even in the absence of the improper reason. *Brock v. Casey Truck Sales, Inc.,* 839 F.2d 872, 878 n. 6 (2d Cir.1988); *NLRB v. Charles Batchelder Co.,* 646 F.2d 33, 43 (2d Cir.1981) (Newman, J., concurring). In this case, the state court has already found in Defendants' favor regarding the misconduct charge. In fact, the state court specifically found that Plaintiff had perjured himself to explain why he had sent a BOCES student to his apartment and that Plaintiff instructed the young man to falsify his time records to conceal what he had done. *Matter of Gould v. Newton,* 163 A.D.2d 820, 559 N.Y.S.2d 844 (4th Dept.1990) (mem.). Plaintiff cannot relitigate this finding.

■ This conclusively establishes a legitimate, non-political basis for Plaintiff's termination. Thus, even assuming, *arguendo,* that political reasons in part motivated KHA in terminating Plaintiff, KHA was nevertheless justified in its action. Certainly, KHA cannot be compelled to keep an employee who asked another employee to perform painting at his home and who then covered up his dishonesty by lying under oath. By the same token, KHA's proffered reason for his employment actions cannot be said to be a pretext where the facts have been conclusively determined to be true.

■ The state court ruling is likewise determinative as to the Village's failure to hire Plaintiff for the firefighter position. Section 61 of the New York Civil Service Law provides:

> Appointment or promotion from an eligible list to a position in the competitive class shall be made by the selection of one of the three persons certified by the appropriate civil service commission as standing highest on such eligible list who are willing to accept such appointment or promotion....

N.Y.Civ.Serv. Law § 61(1) (McKinney 1991). The Village was not required to appoint Plaintiff solely on the basis that he was the highest ranked candidate for the firefighter position, and no constitutional implications arose when the third-ranked candidate, Robert Moreland, Jr., was appointed to the position. *Cassidy v. Municipal Civil Service Commission of New Rochelle,* 37 N.Y.2d 526, 529, 375 N.Y.S.2d 300, 302–03, 337 N.E.2d 752, 754–55 (1975); *Tilles v. Department of Labor,* 257 A.D. 308, 13 N.Y.S.2d 431, 433 (1st Dept.1938). The appointing authority need only show that its decision to pass over a higher-ranked candidate was based on sufficient cause. *Tilles, supra,* 13 N.Y.S.2d at 433. Here, though not necessary to this Court's determination of the pending motion, it is clear that the Village had sufficient cause to deny Plaintiff the firefighter appointment, based on the nature of the misconduct charges pending against him before another municipal authority.

This result is supported by the conclusion of the District Court in *Tavano v. County of Niagara,* 621 F.Supp. 345 (W.D.N.Y. 1985) (Curtin, J.), *aff'd,* 800 F.2d 1128 (2d Cir.1986). In *Tavano,* after non-jury trial, the Court rendered judgment against the plaintiff, who claimed that he had been wrongfully terminated as Assistant Niagara County Attorney based on political affiliation. Recognizing that "the question of political motivation is uncomfortably close and almost inextricably interwoven with the issue of whether the reasons offered by

defendants were legitimate ...," 621 F.Supp. at 350, the Court employed the *Mt. Healthy* analysis in finding that the justification offered by defendants—*i.e.*, that the plaintiff was unable to get along with the newly-appointed County Commissioner of Social Services—was legitimate and not politically motivated. *Id.*

Accordingly, based on the preclusive effect of the state court ruling on the same facts and issues as presented to this Court, there are no material factual issues remaining to be tried with regard to whether Defendants would have reached the same decision as to Plaintiff's termination from the KHA, or his appointment to the firefighter position, even in the absence of their reliance upon Plaintiff's political affiliation. *Mt. Healthy, supra,* 429 U.S. at 287, 97 S.Ct. at 576. Summary judgment in favor of Defendants is therefore appropriate.

## CONCLUSION

For the foregoing reasons, Defendants' motions for summary judgment are granted, and Plaintiff's Complaint is dismissed in its entirety.

SO ORDERED.